JOY HAMERNICK ET AL. *v.* GERARD E. BACH ET AL.
(AC 19811)

JUDITH CARNEY ET AL. *v.* ROBERT SCHULTZ ET AL.
(AC 19812)

Schaller, Flynn and O'Connell, Js.

Argued March 30—officially released July 3, 2001

*Noel R. Newman,* for the appellant (defendant Gerard E. Bach in each case).

*Anthony A. Piazza,* with whom, on the brief, was *Michelle M. Napoli,* for the appellee (named plaintiff in the first case).

*Vincent M. Musto,* for the appellee (named plaintiff in the second case).

*Opinion*

FLYNN, J. The defendant[1] Gerard E. Bach appeals from the judgments of the trial court rendered after the denial of his motions to set aside the verdicts in favor of plaintiffs Judith Carney and Joy Hamernick in these consolidated personal injury actions.[2] The main issue in these appeals is whether General Statutes § 52-225d prohibits a court from listing on the verdict form more than the two specified categories of economic damages and noneconomic damages. The defendant also raises, but only as to the first of the two underlying actions, *Hamernick* v. *Bach,* the issue of whether the court improperly submitted the issue of future economic dam-

---

[1] In *Hamernick* v. *Bach,* the original defendants were Gerard E. Bach, Robert Schultz, Judith Carney and General Electric Capital Corporation. In *Carney* v. *Schultz,* the original defendants were Robert Schultz and Gerard E. Bach. In this opinion, we refer to Gerard E. Bach, the only defendant in these appeals, as the defendant.

[2] In *Hamernick,* the original plaintiffs were Joy Hamernick and Richard Hamernick. In *Carney,* the original plaintiffs were Judith Carney and Christina Carney. In this opinion, plaintiffs refer to Joy Hamernick and Judith Carney.

ages to the jury. We affirm the judgments of the trial court.

The following facts and procedural history are necessary to our resolution of these appeals. The plaintiffs brought an action for personal injuries sustained in a motor vehicle collision that occurred on May 12, 1992. The underlying matters, *Hamernick v. Bach* and *Carney v. Schultz*, were consolidated and thereafter tried to the jury. In *Carney*, the jury awarded $187,439.46 in damages to Judith Carney. The *Carney* verdict form divided the verdict into the following subcategories of past and future economic and noneconomic damages after which we have set out the respective amounts the jury awarded: (1) past medical and related expenses, $3939.46; (2) past pain and suffering, $83,500; (3) past loss of enjoyment of life's activities, $25,000; (4) future pain and suffering, $50,000; and (5) future loss of enjoyment of life's activities, $25,000. The same five categories were utilized for Christina Carney, to whom the jury awarded $14,122.89 in damages. The defendant does not challenge the judgment as to Christina Carney. In addition to the verdict forms, the jury completed interrogatories as to both Carneys in which it broke down the damages into the same five categories listed on the verdict forms. Of some significance to the issue on appeal is the fact that the jury awarded Christina Carney no damages for either future pain and suffering or for future loss of enjoyment of life's activities, but awarded Judith Carney $75,000 in damages for them.

The *Hamernick* verdict form also was divided, but into eight subcategories, which included past medical and related expenses, past lost wages, past pain and suffering, past loss of enjoyment of life's activities, future medical and related expenses, future pain and suffering, future loss of enjoyment of life's activities and future permanent injury. The jury awarded Joy Hamernick nothing for future permanent injury, but

did award various amounts for the other categories of damages in rendering a total damages award of $64,612.26.[3]

The defendant timely filed two motions to set aside the verdicts. In each motion, the defendant maintained that the court "erred in allowing the Plaintiff to submit a verdict form to the jury which broke out damages into several categories, some of which are impermissible. This breakdown of damages has not been allowed by statute or [case law] since the enactment of [Public Acts 1987, No. 87-227 (P.A. 87-227), known as] Tort Reform II on October 1, 1987." The defendant properly preserved the issue for appellate review by timely objecting to the forms, stating that there should not be a separate category on the verdict form for each type of damages claimed.

Our standard of review of a trial court's denial of a motion to set aside a verdict is whether the court abused its discretion. *Patchell* v. *Automobile Ins. Co. of Hartford,* 63 Conn. App. 42, 46, 774 A.2d 1079 (2001). Our review is limited. Absent an abuse of discretion, we will uphold the denial of a motion to set aside the verdict. *Preston* v. *Wellspeak,* 62 Conn. App. 77, 80, 767 A.2d 1259 (2001). A trial court has the "inherent power to set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict." *Munson* v. *Atwood,* 108 Conn. 285, 288, 142 A. 737 (1928). "It is proper for a trial court, using due caution, and in the

[3] The breakdown delineated in the verdict form was as follows: (1) past medical and related expenses, $6312.26; (2) past lost wages, $2000; (3) past pain and suffering, $20,700; (4) past loss of enjoyment of life's activities, $6000; (5) future medical and related expenses, $9600; (6) future pain and suffering, $16,000; (7) future loss of enjoyment of life's activities, $4000; and (8) future permanent injury, $0.

exercise of its discretion, to set aside a verdict when satisfied that . . . its rulings on evidence were erroneous and that those erroneous . . . rulings were consequential enough to have had a substantial effect on the verdict." *Ardoline* v. *Keegan*, 140 Conn. 552, 555–56, 102 A.2d 352 (1954). Our case law emphasizes, however, that this power vested in the trial court is to be exercised with caution. *Munson* v. *Atwood*, supra, 288.

We now consider the legislative history of § 52-225d. Prior to October 1, 1986, neither the jury in a jury trial nor the judge in a trial to the court was required to make special findings breaking down the amount of damages awarded into categories of economic and noneconomic damages. That procedure changed with the enactment of Public Acts 1986, No. 86-338 (P.A. 86-338), often known as "Tort Reform I," which became effective on October 1, 1986. That law required the fact finder to make separate findings as to both past and future economic damages, and also past and future noneconomic damages. In the following year, the legislature amended Tort Reform I by enacting P.A. 87-227, now § 52-225d. Section 52-225d reduced the four mandated categories of findings to only two categories, namely, economic[4] and noneconomic[5] damages.

As originally enacted by the General Assembly in 1986, P.A. 86-338 provided language that was to be codified in § 52-225d and indicated that the fact finder, in addition to determining the four categories of damages, should make "any other separate findings of damages

---

[4] Economic damages are defined as "compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages . . . ." General Statutes § 52-572h (a) (1).

[5] Noneconomic damages are defined as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ." General Statutes § 52-572h (a) (2).

directed by the court as necessary to carry out the provisions of this section." P.A. 86-338, § 2 (b) (1). In the 1987 amendment, effective October 1, 1987, P.A. 87-227 repealed the language concerning the making of other findings directed by the court.

The defendant maintains that under § 52-225d, as amended in 1987, the only categories of damages that should have been considered were economic and noneconomic damages. He further asserts that in permitting more than two categories of damages on the verdict form, the court proceeded beyond the plain language of § 52-225d. He argues that in doing so, the court implicitly encouraged the jury to award additional damages to the plaintiffs. He contends that when the General Assembly repealed the express statutory authority to make any other "separate findings of damages [as] directed by the court," trial courts lost the power to put more than the subtotals of economic and noneconomic damages and their grand total on the verdict form. He further claims that the departure from what he views as the statutory requirement, itself, prejudiced him. The defendant concludes that the court improperly refused to set aside the verdicts. We disagree.

We begin our analysis by reviewing the words of the operative statute, § 52-225d. That statute requires the fact finder, whether a judge in a trial to the court or a jury in a jury trial, to "make separate findings for each claimant specifying the amount of any economic damages and noneconomic damages . . . ." General Statutes § 52-225d (a) (1). Although the statute does not require that those findings be made on the verdict form, trial judges during the fourteen years since that statute was enacted have often used, in the interest of simplicity, such a form in jury cases. The statute does not prohibit those findings from being placed on the verdict form itself. It provides only that the fact finder shall make such findings, but does not indicate on what docu-

ment they should appear.[6] The defendant, nonetheless, claims that the court improperly permitted "a verdict form that included more categories of damages than what is provided for in the statute itself," meaning that the verdict form should have been limited to the categories of economic and noneconomic damages as set out in the mandate of § 52-225d. We conclude that § 52-225d neither mandates nor prohibits the placement of the two categories of economic and noneconomic damages on the verdict form itself, and does not prohibit reasonable general, past and future, subcategories of each of those classes of damages about which there was evidence and about which the court instructed the jury.

The next step of our analysis leads us to the principle that § 52-225d must be read in light of our existing common law. The premise of the defendant's argument is that the authority to render a verdict with subcategories of special findings can arise only from statutory authority and that when P.A. 87-227 repealed the requirement that the fact finder make separate findings as to both past and future economic and noneconomic damages, it terminated the court's authority to have the jury render such a verdict. We find that argument to be without merit.

It is axiomatic under our common law that in civil trials, issues are not submitted to juries for determination unless warranted by the pleadings and evidence. Thus, even though § 52-225d provides that a jury, as the fact finder, shall make separate findings that specify the amount of economic and noneconomic damages, such a finding would not be mandated as to noneconomic damages if the plaintiff had not pleaded that he suffered them, or if pleaded, had not offered evidence

---

[6] In a trial to the court, those findings presumably would be made in the court's oral ruling or memorandum of decision.

in support of them. Similarly, if a court bifurcated the issues in a personal injury case so that liability issues were tried to a jury first, despite the statute, there could be no findings of either economic or noneconomic damages at that stage of the proceedings. Nonetheless, the fact finder still would have rendered a verdict.

Our point is that courts have a necessary inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and to facilitate the administration of justice as they deem necessary. *In re Appeal of Dattilo*, 136 Conn. 488, 492, 72 A.2d 50 (1950). With that same principle in mind, we turn next to the issue of whether the court impermissibly permitted subcategories of both economic and noneconomic damages to be listed on the verdict form. It is clear that between the initial adoption of Tort Reform I in 1986 and its amendment adopting Tort Reform II in l987, the legislature removed the statutory mandate for a court to order "any other separate findings of damages . . . necessary to carry out the *provisions of this section*." (Emphasis added.) P.A. 86-338, § 2 (b) (1). We do not conclude, however, that the General Assembly intended by that deletion to take from our courts the power they always have enjoyed under the common law to require a jury to render special verdicts[7] or to answer interrogatories. See 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1971) § 199, p. 791 (right to render special verdict was common-law development); see *Johnson* v. *Higgins*, 53 Conn. 236,

---

[7] We use the term "special verdict" to encompass any return the jury makes that sets forth its opinions as to the existence or nonexistence of a fact or facts; G. Clementson, Special Verdicts and Special Findings by Juries (1905) p. 45; rather than in the statutory sense, in which the jury, in rendering a special verdict, states all the facts at issue and makes conditional conclusions. Pursuant to those conditional conclusions, if the court should favorably decide certain legal questions for the plaintiff, the jury's finding then would be for the plaintiff and if not, then for the defendant. See General Statutes § 52-224 (a).

240–41, 1 A. 616 (1885) (jury may be required to return a verdict on each separate issue). "The power of the trial court to submit proper interrogatories to the jury, to be answered when returning their verdict, does not depend upon the consent of the parties or *the authority of statute law*." (Emphasis added.) *Freedman* v. *New York, N.H. & H.R. Co.*, 81 Conn. 601, 612, 71 A. 901 (1909); see also Practice Book § 16-18 (judicial authority may submit interrogatories to jury). Tort Reform I conferred on the fact finder the power only to *carry out the purposes* of § 52-225d. It did not address other concerns that a court or the parties might have to furnish the basis of a judgment being rendered or to test the correctness of a verdict being rendered by eliciting a determination of material fact. Those are the very concerns that special verdicts and interrogatories, respectively, address.

In this case, our examination of the verdict forms reveals that the plaintiffs requested both special verdicts and interrogatories. The court honored that request by requiring the jury to render an actual verdict on (1) whether any one of the acts of negligence pleaded by the plaintiffs had been proven, (2) whether the defendant's negligence proximately caused the plaintiffs' injuries, (3) the amount of damages according to various categories and subcategories, and (4) whether the defendant was operating the truck that was involved in the May 12, 1992 collision as an agent of the defendant Robert Schultz. That information sufficiently instructed the trial judge concerning the jury's findings so that the judge knew which defendants, if any, against whom judgment should be rendered. If error occurred in any evidentiary ruling or portion of the court's instructions to the jury, the verdict form minimized the potential for the setting aside of the entire verdict and the necessary retrial of the whole case.

Last, we address the defendant's concerns that the verdict form was prejudicial because it was contrary to § 52-225d and, as contended at oral argument, may have induced the jury to award more damages because of the expansion of the damages categories beyond the two listed and required by statute. We previously have determined that § 52-225d contains no such prohibition and that the court's power is not dependent on the existence of such an express statutory authority. The jury was required to examine each category of damages, not merely because the verdict forms set them out separately, but also because the interrogatories required the jury to do so and the judge so charged the jury. Therefore, any alleged error was harmless. In other words, since the jury was required to consider each subcategory of damages listed in the interrogatories, whether it again entered those damages amounts on the verdict form and totaled them or did so only on a separate piece of paper is of no consequence. It would be required to perform the same calculation to render its verdict. Furthermore, it is telling that the jury had no apparent difficulty awarding Christina Carney *no damages* for future pain and suffering or for future loss of enjoyment of life's activities under the very same procedures and forms of which the defendant disapproves. If the process somehow improperly increased damages, the same process used in Christina Carney's case should have done so. The ciphers the jury awarded to her for future damages show that the process did not unfairly encourage awards of damages contrary to the evidence.

The defendant's final issue is raised only in *Hamernick* v. *Bach* and addresses the sufficiency of the evidence as to future economic damages. We do not conclude that the court improperly submitted future economic damages to the jury. As a general principle, a jury's determination of future economic damages should be based on "an estimate of reasonable probabil-

ities, not possibilities." (Internal quotation marks omitted.) *Marchetti* v. *Ramirez*, 240 Conn. 49, 54, 688 A.2d 1325 (1997). That standard allows the jury to derive an estimate of future medical expenses without speculating. Id. "Because . . . [f]uture medical expenses do not require the same degree of certainty as past medical expenses . . . [i]t is not speculation or conjecture to calculate future medical expenses based upon the history of medical expenses that have accrued as of the trial date . . . *when there is also a degree of medical certainty that future medical expenses will be necessary.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 54–55, citing *Seymour* v. *Carcia*, 221 Conn. 473, 478–79, 604 A.2d 1304 (1992).

In *Hamernick* v. *Bach*, sufficient evidence was presented to the jury to enable it to base its estimate of future medical expenses on a "probability." For instance, the plaintiff's treating physician, Donald J. Lawlor, stated in his medical report of January 29, 1996, that "[b]ased on history, physical findings and radiographic findings, as well as alteration of life-style, I feel that Ms. Joy Hamernick has sustained an 8-10% [permanent partial disability] of her lumbar spine. *She will most probably require symptomatic care for the rest of her natural life.*" (Emphasis added.) Moreover, the plaintiff had incurred $6312.26 in medical expenses as of the date of trial. On the basis of that evidence, we conclude that the court properly submitted future economic damages to the jury.

For all of the previously discussed reasons, we conclude that the court did not abuse its discretion in denying the defendant's motions to set aside the verdicts in each case.

The judgments are affirmed.

In this opinion the other judges concurred.