STATE OF CONNECTICUT *v.* ROLAND G. MADORE
(AC 26155)

Bishop, Gruendel and West, Js.

Argued February 21—officially released June 27, 2006

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, *Melissa Streeto Brechlin*, assistant state's attorney, and *David J. Smith*, assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Roland G. Madore, appeals from the judgment of conviction, rendered after a joint jury trial, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). On appeal, the defendant claims that (1) the court improperly granted the state's motion to consolidate his case with that of his brother and (2) the evidence was insufficient to support his conviction. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. From approximately June through August, 2001, the defendant and his brother, William S. Madore, resided with their mother in Taftville. During this time, the victims,

L and F,[1] were both fifteen years old. L knew both the twenty-seven year old defendant and his twenty-five year old brother, William Madore, prior to August 10, 2001, and had visited their house on numerous occasions, often accompanied by her sixteen year old sister.[2] F did not know the defendant prior to August 10, 2001, and never had been inside the Madore house, although she had met William Madore on a few occasions.

On the evening of August 10, 2001, the victims discussed plans for the evening and decided to visit the Madore brothers at their house. When the victims arrived at the house and knocked on the door, the defendant answered, and the victims followed him into his bedroom. The victims and the defendant then drank Smirnoff Ice, a malt liquor beverage, watched television and talked for a while. After about fifteen minutes, F left the defendant's bedroom to use the bathroom. While returning from the bathroom, she passed William Madore's bedroom, saw that his door was ajar, entered the room and sat down on his bed. William Madore offered F more Smirnoff Ice, which she drank while they talked.

Approximately twenty to thirty minutes after L and F arrived at the Madore house, F's sister, H, and her friend, A, arrived. The defendant answered the door and told them that F was in the house. H and A entered the house and followed the defendant to his bedroom, where they met L. The three girls and the defendant talked for a while before H left the room to check on

---

[1] In keeping with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] The Madore brothers, their mother, the victims, and F's sister, H, all testified that, before August 10, 2001, the brothers and the girls were all good friends. L testified that, during many of her visits to the Madore residence, she had consumed alcohol and marijuana with the brothers, and that they had provided both substances to her.

her sister, F. H went to William Madore's bedroom where, through a crack in the door, she saw F and William Madore talking and drinking Smirnoff Ice while sitting on his bed. H returned to the defendant's room and continued talking with him, A and L. Approximately twenty to thirty minutes later, H again went to William Madore's bedroom where she saw F and William Madore engaging in sexual intercourse.

After H returned to the defendant's room a second time, she and A decided to leave the Madore house. The defendant, now alone with L in his bedroom, began kissing L and touching her breasts and vaginal area. He also removed her pants and penetrated her vagina with his fingers. The two then fully removed their clothing and had sexual intercourse. When L and the defendant had finished having sex, L got dressed and waited for F. The defendant remained sitting on his bed wearing only his boxer shorts and began wiping his ejaculation off his stomach. F returned to the defendant's bedroom at this time. The two girls then left the Madore house.

The state charged the defendant with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2) in connection with the events of August 10, 2001. The state also charged William Madore with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (2), two counts of delivery of liquor to a minor in violation of General Statutes § 30-86 and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).

Upon the state's motion, the defendant's case was consolidated for trial with that of his brother. On Octo-

ber 28, 2004, the jury found the defendant guilty of sexual assault in the second degree and found him not guilty of risk of injury to a child.[3] The defendant received a total effective sentence of ten years incarceration, execution suspended after five years, followed by fifteen years probation. This appeal followed.

I

The defendant claims that the court improperly granted the state's motion to consolidate his case with that of his brother. Specifically, the defendant argues that (1) joinder of the cases improperly allowed the jury to hear evidence against his brother that would not have been admitted in a trial of the defendant alone and (2) his right to a fair trial by an impartial jury was violated because the court did not have the proper legislative authority to consolidate the cases. We are not persuaded by either argument.

The following facts are relevant to the defendant's claims. On October 5, 2004, the state filed a motion to consolidate the cases of the defendant and his brother, William Madore, for a joint trial. The state claimed that the informations in the two cases were both pending before the court, that the witnesses for each case overlapped, and that granting the motion would foster judicial economy and would not result in substantial injustice.[4] The defendant requested that the motion be denied, claiming that the two cases presented sufficient differences. Specifically, the defendant argued that William Madore was charged with eight counts while the defendant was charged with only four and that informa-

---

[3] The same jury found William Madore guilty of sexual assault in the second degree and two counts of delivery of liquor to a minor, and found him not guilty of all remaining charges.

[4] The state raised these same claims when the court heard argument on the motion October 5, 2004.

tion about William Madore's criminal history could prejudice the defendant's case.[5] The court granted the motion to consolidate.[6]

## A

The defendant first claims that he was prejudiced by the consolidation of the two cases because the jury was allowed to consider evidence admitted against his brother that would not have been admissible against the defendant alone. Without consolidation, argues the defendant, the state would not have been able to prove its case against him. We are not persuaded.

We first set forth our standard of review of the defendant's claim. "[W]hether to consolidate or sever the trials of defendants involved in the same criminal incident lies within the sound discretion of the trial court. . . . Ordinarily justice is better subserved where parties are tried together. . . . Joint trials of persons jointly indicted or informed against are the rule, and separate trials the exception resting in the discretion of the court. . . . A separate trial will be ordered where the defenses of the accused are antagonistic, or evidence will be introduced against one which will not be admissible against others, and it clearly appears that a joint trial will probably be prejudicial to the rights of one or more of the accused. . . . [T]he phrase prejudicial to the rights of the [accused] means something more than that a joint trial will probably be less advantageous to the accused than separate trials." (Internal

---

[5] In response to the defendant's argument, the state noted that "the witnesses in these cases and the victims in these cases are the same people that were the victims in the prior incidents by Mr. [William] Madore. . . . [T]he testimony about the sexual assaults before and after on this date will come [into evidence] anyway at the trial. I don't believe there'll be any prejudice to either of the defendants based on that."

[6] Neither defendant filed a motion to sever the cases or took any action to oppose the joinder of the cases for trial. The defendants also did not raise any constitutional challenge to joinder of the cases.

quotation marks omitted.) *State* v. *Diaz*, 69 Conn. App. 187, 195, 793 A.2d 1204 (2002).

"The test for the trial court is whether substantial injustice is likely to result unless a separate trial be accorded. . . . [W]e will reverse a trial court's ruling on joinder only where the trial court commits an abuse of discretion that results in manifest prejudice to one or more of the defendants. . . . The discretion of the court is necessarily exercised before the trial begins and with reference to the situation as it then appears to the court. . . . Therefore, we must review the trial court's decisions . . . to deny the defendants' motion for severance based on the evidence before the court at the time of the motions." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 73 Conn. App. 338, 366–67, 808 A.2d 388, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002).

Applying this standard to the facts of this case, we conclude that the court did not abuse its discretion in consolidating the trials of the defendant and his brother. The brothers' crimes occurred on the same day, at the same time, in the same house and involved the same group of teenage girls. In its motion to consolidate, the state further explained that all of its witnesses would testify in both brothers' trials and that proof of the charges against the defendant and his brother was dependent on the same evidence, witnesses and facts. Even if evidence against William Madore might not have been admissible against the defendant, the court properly determined that the defendant would not suffer undue prejudice. "Although evidence that is probative of one defendant's guilt but technically admissible only against a codefendant might present a risk of prejudice from a joint trial, such risk must be compelling in order to warrant severance of the trials." *State* v. *Turner*, 252 Conn. 714, 740, 751 A.2d 372 (2000). The defendant's claim that the jury relied on evidence against William

Madore to convict the defendant is not compelling because there was sufficient independent evidence of the defendant's guilt.[7]

Moreover, any possible risk of prejudice was mitigated by the court's instructions to the jury. The court instructed the jury no fewer than four times that it must consider the case against each of the defendants separately. During the final instructions to the jury, the court read the information against William Madore and then told the jury, "Once again, each charge against [William Madore] is set forth in the information in a separate paragraph or count, and each offense charged must be considered separately by you in deciding the guilt or innocence of the defendant. Now, also, I would remind you that in this case obviously there are two defendants. You must consider the case against each of the defendants separately in determining the guilt or innocence of the defendant." "Barring contrary evidence, we must presume that juries follow the instructions given them by the trial judge." (Internal quotation marks omitted.) *State* v. *Bell*, 93 Conn. App. 650, 658, 891 A.2d 9, cert. denied, 277 Conn. 933, 896 A.2d 101 (2006). In light of the evidence and the jury instructions, we conclude that the court acted within its discretion in consolidating the defendant's and William Madore's trials.

B

The defendant next claims that his right to a trial by an impartial jury was violated because the court did not have the legislative authority to consolidate the cases. Specifically, the defendant argues that the legislature, which defines the court's power pursuant to the constitution of Connecticut, article fifth, § 1, as

---

[7] We address the defendant's sufficiency of the evidence claim in part II and conclude that the evidence was sufficient to convict the defendant on the charge of sexual assault in the second degree.

amended by article twenty, § 1, has not enacted a statute giving the court the power to join cases for the trial of different defendants. Further, he claims that Practice Book § 41-19,[8] which addresses the joinder of cases involving the same defendant or different defendants, does not grant the court such power either because it exceeds the court's legitimate rule-making authority.

The defendant did not preserve his claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[9] We agree with the defendant that the record is adequate for review and that the claim is of constitutional magnitude. The defendant's claim, however, fails to satisfy the third prong of *Golding* analysis because he is unable to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

First, the court did not violate the defendant's right to a trial by an impartial jury when it consolidated the two cases. The defendant argues that the legislature has exclusive authority to govern the power of the courts in the area of administration, practice and procedure. On the contrary, the court's inherent power permits it to regulate such matters and is not dependent on any act of the legislature. "[C]ourts have a necessary inherent power, independent of statutory authorization, to prescribe rules to regulate their proceedings and to facilitate the administration of justice as they deem

---

[8] Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

[9] Under *Golding*, a defendant may prevail only if all four of the following conditions are met: "(1) the record is adequate to review the alleged claim or error; (2) the claim is of constitutional magnitude alleging a violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

necessary." *Hamernick* v. *Bach,* 64 Conn. App. 160, 167, 779 A.2d 806 (2001).[10] The court, therefore, did not need a legislative enactment to have the authority to join the cases for trial.

Second, the court did not exceed its legitimate rule-making authority when it relied on Practice Book § 41-19 to join the defendant's and his brother's cases. Practice Book § 41-19 defines court practices regarding joinder of cases involving the same defendant or different defendants. The rule does not, as the defendant contends, grant courts the power to consolidate cases. Rather, as discussed, courts rely on their inherent power to join cases, the purpose of which is to "[expedite] the administration of justice, [reduce] the congestion of trial dockets, [conserve] judicial time, [lessen] the burden upon citizens who must sacrifice both time and money to serve upon juries, and [avoid] the necessity of recalling witnesses who would otherwise be called to testify once." (Internal quotation marks omitted.) *State* v. *Jackson,* supra, 73 Conn. App. 366. Pursuant to Practice Book § 41-19, the court properly relied on its inherent power to join the defendant's case with that of his brother. We therefore conclude that the defendant has failed to meet the third prong of *Golding* because the alleged constitutional violation does not clearly exist.

The defendant also seeks review under the plain error doctrine. See Practice Book § 60-5. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.

---

[10] General Statutes § 51-14 (b) provides in relevant part that any such rules adopted by the courts, necessarily including Practice Book § 41-19, shall be reported "to the General Assembly for study at the beginning of the each regular session. . . . Any rule or any part thereof disapproved by the General Assembly by resolution shall be void and of no effect . . . ."

. . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *J.R.*, 69 Conn. App. 767, 778, 797 A.2d 560, cert. denied, 260 Conn. 935, 802 A.2d 89 (2002). As we concluded previously, the defendant was not deprived of a fair trial when the court, relying on its inherent power, joined the defendant's case with that of his brother. Accordingly, plain error review is not warranted in this case.

## II

The defendant finally claims that the evidence was insufficient to support his conviction of sexual assault in the second degree in violation of § 53a-71 (a) (1).[11] Specifically, the defendant argues that the state's evidence failed to prove beyond a reasonable doubt that he engaged in sexual intercourse. We reject the defendant's claim.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt

---

[11] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

General Statutes § 53a-65 (2) defines "sexual intercourse" in relevant part as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. . . . Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Thus, [w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 276 Conn. 452, 460–61, 886 A.2d 777 (2005).

Construing the evidence in the light most favorable to sustaining the verdict, the jury reasonably could have found that the defendant committed sexual assault in the second degree. In this case, L, who was age fifteen on August 10, 2001, testified that the defendant, who was then age twenty-seven, penetrated her vagina with

his fingers and also engaged in vaginal-penile intercourse with her. F also testified that, when she walked into the defendant's room, she saw him wiping ejaculation off his stomach with a cloth, and that L told her that she and the defendant had just had sexual intercourse. The facts recited by L and F, if credited by the jury, were sufficient to warrant the jury's conclusion of the defendant's guilt.[12]

Further, it was within the jury's province to credit the testimony of L and F and to disbelieve the defendant.[13] "As to any conflicting testimony provided by the state's witnesses, we follow the well established rule that we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . When conflicting testimony is presented, the jury may credit the testimony it finds believable. . . . Therefore, [t]he [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Whitfield*, 75 Conn. App. 201, 214 n.6, 815 A.2d 233, cert. denied, 263 Conn. 910, 819 A.2d 842 (2003). Accordingly, we conclude that the evidence was sufficient to convict the defendant on the charge of sexual assault in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] Indeed, L's testimony alone, if credited by the jury, was sufficient to sustain the conviction. The court properly instructed the jury, "[O]ne witness' testimony is sufficient to convict if you believe it beyond a reasonable doubt and if it establishes either standing alone or together with any other evidence all of the elements of the crimes charged beyond a reasonable doubt."

[13] The defendant testified that he did not have sex with L and did not give her alcohol.