# STATE OF CONNECTICUT *v.* MICHAEL FINAN
## (SC 17185)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued February 16—officially released August 16, 2005

*Pamela S. Nagy*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, was *James E. Thomas*, state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Michael Finan, appeals, following our grant of certification to appeal, from the judgment of the Appellate Court affirming his conviction and concluding that the trial court properly admitted into evidence the lay opinion testimony of four police officers as to the identification of the defendant on a surveillance videotape of a robbery. *State* v. *Finan*, 82 Conn. App. 222, 233, 240, 843 A.2d 630 (2004). The defendant claims that the Appellate Court improperly determined that the opinion testimony of the four police officers was not an opinion as to the ultimate issue in the case. We agree with the defendant, and, accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court set forth the following facts, which reasonably could have been found by the jury.

"At approximately 2:50 a.m. on December 23, 1999, [a man later identified as] the defendant and an unidentified man entered a 7-Eleven convenience store in South Windsor, one behind the other, while [the store clerk] was working and while the store's surveillance video camera was operating and aimed in the direction of the checkout area. The [man identified as the] defendant was wearing a green hooded sweatshirt, and the unidentified man wore a mask and carried a rifle or shotgun. The videotape showed the unarmed man walking past the checkout area out of the camera's range after which the armed man could be seen stopped at the checkout counter and pointing his weapon at the clerk. Shortly thereafter, the unidentified armed man could be seen walking from the checkout area out of the store, and the defendant also could be seen simultaneously exiting the store. During the subsequent investigation, four South Windsor police officers viewed the videotape of the two men entering and departing from the store, and of the events of the robbery itself involving the unidentified man." Id., 224–25.

"Prior to the start of the trial, the defendant filed a motion to preclude testimony by [the] four [South Windsor] police officers as to their opinion that he was depicted on the videotape. The defendant argued that the officers' testimony that he was the unmasked individual on the videotape was an opinion on an ultimate issue, which is prohibited by *State* v. *Heinz*, 193 Conn. 612, 627, 480 A.2d 452 (1984), and § 7-3 of the Connecticut Code of Evidence.[1] In response, the state proffered that the officers would not testify as to their opinion, but rather as to their suspicion that the defendant was

---

[1] Section 7-3 (a) of the Connecticut Code of Evidence provides: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that, other than as provided in subsection (b), an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue."

depicted on the videotape. The state argued that the testimony was admissible under this court's holding in *State* v. *Fuller*, [56 Conn. App. 592, 744 A.2d 931, cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000)]. Although the court granted the motion in limine, the court stated that the officers would be permitted to testify in that regard as long as their testimony was limited to their suspicions that the defendant was depicted on the videotape.

"Subsequently, the four officers testified at trial that after viewing the surveillance videotape, they suspected that the unmasked man on the videotape was the defendant. Detective Michael Thompson testified that he had known the defendant for ten years, had watched him grow up and knew his family. He stated that his suspicions were based on the defendant's mannerisms and shy walk. Detective Michael Russotto testified that he knew the defendant and his family for eight to ten years and suspected that the defendant was the unmasked man on the videotape. He claimed that he recognized the defendant from his profile. Officer Kristina Ferrante testified that she had known the defendant for eight years and suspected that he was the man on the videotape on the basis of his mannerisms, specifically his profile and walk. Finally, Officer Daniel Martin testified that upon reviewing the videotape, he immediately suspected that the defendant was the unmasked man on the basis of his sixteen years of contact with the defendant and, in particular, the defendant's distinct walk. In addition to the police officers' identification testimony, the state offered testimony from Robert Teachman, who stated that the defendant had told him that he had participated in the robbery." *State* v. *Finan*, supra, 82 Conn. App. 226–27.

"On October 30, 2000, the jury found the defendant guilty of robbery in the second degree and conspiracy

to commit robbery in the second degree. On December 12, 2000, the court found the defendant in violation of his probation [imposed on a previous conviction] and on February 13, 2001, sentenced him to a total effective term of sixteen years incarceration, suspended after seven years, and five years probation." Id., 225.

The defendant subsequently appealed from the judgment of conviction to the Appellate Court, claiming that the trial court had abused its discretion when it permitted the police officers to testify as to his identity on the store surveillance videotape.[2] Id., 224. The Appellate Court first concluded that the state improperly had characterized the officers' testimony as suspicion rather than opinion testimony. Id., 228. It further determined that the testimony did not constitute prohibited lay opinion as to the ultimate issue in the case because, although the identification of the person in the videotape as the defendant was material to his participation in the robbery, standing alone, his presence in the store was not sufficient evidence of his guilt. Id., 232. The court finally concluded that the probative value of the officers' testimony outweighed its prejudicial effect, and that, therefore, it was admissible. Id., 234. Accordingly, the Appellate Court affirmed the defendant's conviction, with one judge dissenting. Id., 241. Thereafter, we granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that, under the circumstances of this case, the trial court properly admitted the lay opinion testimony of the police officers as to the identification of the defendant on the convenience store surveillance videotape?" *State* v. *Finan*, 269 Conn. 901, 851 A.2d 304 (2004). This appeal followed.

---

[2] In his appeal to the Appellate Court, the defendant also raised four claims of jury misconduct, which the Appellate Court rejected. *State* v. *Finan*, supra, 82 Conn. App. 234. Those claims are not before us in the present appeal.

On appeal, the defendant claims that, even if the police officers' testimony was admissible under § 7-1 of the Connecticut Code of Evidence,[3] it was inadmissible as an opinion on an ultimate issue in the case in violation of § 7-3 of the Connecticut Code of Evidence. Specifically, the defendant claims that, although a layperson may testify to the identity of a defendant as the perpetrator in limited circumstances, a layperson may not testify to the identity of the defendant if such testimony constitutes an opinion on an ultimate issue to be decided by the trier of fact. The defendant further claims that the admission of the officers' testimony was particularly harmful due to the otherwise weak nature of the state's case, and that, therefore, he should be granted a new trial.

The state disagrees with the defendant's portrayal of the officers' testimony as opinion testimony on an ultimate issue in the case, contending that the defendant's presence at the scene of the robbery did not itself establish his guilt. Should this court determine that the officers' testimony constituted opinions on an ultimate issue, the state urges this court to construe their testimony as an exception to the rule otherwise barring such testimony because their opinions concerned identity. Finally, the state claims that the defendant has failed to demonstrate that any impropriety in admitting the officers' testimony was harmful because it merely corroborated additional eyewitness identification of the defendant as the perpetrator of the robbery.

We begin by setting forth the applicable standard of review. "Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the

---

[3] Section 7-1 of the Connecticut Code of Evidence provides that, "[i]f a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue."

admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 371, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). With this standard in mind, we turn to the defendant's claims.

We begin with § 7-3 (a) of the Connecticut Code of Evidence, which provides in relevant part that, "[t]estimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact . . . ." As the commentary to § 7-3 indicates, the rule adopts the common-law bar against admission of a witness' opinion on an ultimate issue in a case. The common-law rule protects the defendant's right to have a jury determine his guilt or innocence. *State* v. *Heinz*, supra, 193 Conn. 628.

We agree with the Appellate Court that the phrase "ultimate issue" is "not amenable to easy definition." *State* v. *Finan*, supra, 82 Conn. App. 231. As a rule, however, "[t]estimony is objectionable if it embraces an opinion on the ultimate issue to be decided by the trier of fact." (Internal quotation marks omitted.) *State* v. *Spigarolo*, supra, 210 Conn. 372. It is improper for a witness to offer testimony that essentially constitutes a legal opinion about the guilt of the defendant. *State* v. *Heinz*, supra, 193 Conn. 627.

The Appellate Court characterized an ultimate issue as one that cannot "reasonably be separated from the essence of the matter to be decided [by the trier of fact]." *State* v. *Finan*, supra, 82 Conn. App. 232. We agree. Federal courts consistently have concluded that the identification of the defendant as the perpetrator of the crime at issue is such an ultimate issue. In *United States* v. *Monsour*, 893 F.2d 126 (6th Cir. 1990), the defendant was charged with robbing a bank, and on

appeal the court considered the admissibility of identification testimony. The court explicitly stated that, "[t]he primary issue at trial was the identification of [the] defendant as the bank robber." Id., 127. Similarly, in *Mullings* v. *Meachum*, 864 F.2d 13, 15 (2d Cir. 1988), in which the defendant was charged with robbing a convenience store, the court stated, "[i]n this case, the primary issue before the jury was the identity of the robber."[4]

On the facts of the present case, we conclude that the identification of the defendant as one of the perpetrators shown on the videotape was an ultimate issue in the case. Indeed, we agree with Judge Flynn's assessment in his dissent that, "[t]he only real issue to be determined by the jury was whether the defendant, and not some other person, was one of the two [men] who had committed the robbery. In that sense, it was an ultimate issue." *State* v. *Finan*, supra, 82 Conn. App. 242.

During closing argument, defense counsel conceded that, if the jury was convinced that the defendant was the unidentified man in the videotape, it should find him guilty. Defense counsel argued: "Has the state proved to you beyond a reasonable doubt that that was [the defendant] in that video[tape]? I submit to you that if the answer is yes, then you should find [the defendant] guilty. . . . I don't think any reasonable person could come to [the] conclusion that that was any particular person depicted on that video[tape]." Defense counsel's

---

[4] To the extent that federal courts have determined that lay opinion testimony concerning the ultimate issue of identification is admissible, those conclusions are inapposite to the present case, because under the Federal Rules of Evidence, "testimony in the form of an opinion or inference otherwise admissible is *not* objectionable because it embraces an ultimate issue to be decided by the trier of fact." (Emphasis added.) Fed. R. Evid. 704 (a). Accordingly, in federal court, "[s]uch an opinion is not necessarily objectionable for the reason that it may speak to the ultimate issue." *United States* v. *Sellers*, 566 F.2d 884, 886 (4th Cir. 1977).

closing argument focused entirely on the identification of the person in the videotape. He concluded his closing argument by saying: "I would submit to you that based on the evidence, as well as the lack of evidence, that the state has not proved beyond a reasonable doubt that [the defendant] was the second man in that robbery."

The trial court's instructions to the jury also demonstrated the centrality of the identification of the defendant in the videotape in determining the defendant's guilt. In charging the jury, the trial court said: "In addition to having proved each essential element or each crime charged beyond a reasonable doubt, the state must also prove that the defendant . . . is the perpetrator of each of the crimes charged. Identification is a question of fact for you to decide, taking into consideration all the evidence that you have seen and heard in the course of the trial." The trial court went on to explain specifically that, "[t]he identification of the defendant by a single witness as the one involved in the commission of the crime is in and of itself sufficient to justify a conviction of such person provided, of course, that you are satisfied beyond a reasonable doubt of the identity of the defendant as the one who committed the crime as charged." Thus, the issue of the defendant's identification as the person shown in the videotape reasonably could not be separated from the essence of the matter to be decided by the jury, which was the defendant's guilt or innocence.

At oral argument in this court, the state itself conceded that the identity of the defendant as the perpetrator shown on the videotape was an "essential element" of the crime at issue. Although the state then argued that an essential element of the crime does not constitute an ultimate issue, we are not persuaded that such a distinction exists under the facts of the present case. The identification of the defendant as one of the individuals depicted on the videotape was fundamental to the

jury's conclusion that the defendant was one of the perpetrators of the robbery. Accordingly, we conclude that under the facts of the present case, the Appellate Court improperly determined that the lay witness testimony correctly was admitted.

We further are not persuaded by the state's claim that testimony as to identity is an exception to the rule barring opinion testimony on an ultimate issue. It is true that under certain circumstances, lay witnesses may testify regarding identity or similarity of persons. See *State* v. *Watson*, 50 Conn. App. 591, 600, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001); *State* v. *Gagnon*, 18 Conn. App. 694, 714, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989). As provided in § 7-3 (a) of the Connecticut Code of Evidence, however, such testimony is not admissible when it constitutes an opinion on an ultimate issue. Section 7-3 contains no exception for identity testimony. Moreover, the commentary to § 7-3, which discusses the possibility that this court relaxed the restriction on the admissibility of such testimony in *State* v. *Spigarolo*, supra, 210 Conn. 353, ultimately concludes that any such exception is "rejected in favor of a complete ban on the admissibility of such testimony." Conn. Code Evid. § 7-3, commentary (a).

We next must determine whether the trial court's admission of the officers' testimony constituted harmful error. "Because the evidentiary impropriety is not constitutional in nature, the defendant bears the burden of demonstrating harm. . . . [W]e have not been fully consistent in our articulation of the standard for establishing harm. . . . One line of cases states that the defendant must establish that it is more probable than not that the erroneous action of the court affected the result. . . . [See, e.g.] *State* v. *McIntyre*, 242 Conn. 318,

329, 699 A.2d 911 (1997); *State* v. *Wilkes*, 236 Conn. 176, 188, 671 A.2d 1296 (1996) . . . . A second line of cases indicates that the defendant must show that the prejudice resulting from the impropriety was so substantial as to undermine confidence in the fairness of the verdict. See, e.g., *State* v. *Askew*, 245 Conn. 351, 371–72, 716 A.2d 36 (1998)." (Citations omitted; internal quotation marks omitted.) *State* v. *Grenier*, 257 Conn. 797, 806–807, 778 A.2d 159 (2001). For purposes of the present case, however, we need not choose between the two approaches or determine whether there is any functional difference between them, because we conclude that the defendant has satisfied his burden of proving harm under either standard. See id.

In presenting its case to the jury, the state called ten witnesses, four of whom did not identify either of the robbers depicted in the videotape. The police officers constituted four of the six witnesses who identified the defendant as one of the perpetrators shown on the videotape. Each of the four officers testified that he or she had known the defendant for anywhere between eight and sixteen years and that based on previous knowledge of the defendant, each suspected that the defendant was the person depicted on the videotape. *State* v. *Finan*, supra, 82 Conn. App. 226–27. Thus, a significant portion of the state's case was the improperly admitted testimony of multiple law enforcement officials who testified to their involvement in the investigation of the robbery and their suspicion that the defendant was the perpetrator. It is likely that the jury substantially relied on this testimony because the videotape itself was brief and difficult to discern. As the Appellate Court stated, "the depiction of the [individual identified as the] defendant on the videotape was momentary and not particularly clear. The record reflects that on the videotape, [that individual] was seen

wearing a sweatshirt with a hood pulled over his head so that his face was partially obscured. The videotape also showed the [individual] from his profile, thus further obscuring his face. Additionally, the entire robbery lasted about two minutes, and the [individual identified as the] defendant could be seen only briefly at the beginning and end of the videotape." Id., 229.

In addition, the state's case as a whole was not strong. There was no physical evidence linking the defendant to the robbery, and the credibility of the witnesses other than the police officers had been called into question. We agree with Judge Flynn's assessment of the state's witnesses. "The state called ten witnesses. Four of them did not identify either of the robbers. Of the six witnesses who did identify the defendant as one of the robbers, four of them were the officers . . . . The fifth was the store clerk who saw the robbers for some number of seconds but less than one minute and who told the police shortly after the robbery that he could not identify the robbers. . . . Teachman, the sixth witness, who claimed that the defendant had admitted having participated in the robbery to him, was impeached by the fact that he had two felony charges pending against him in another jurisdiction. Several witnesses who were called on the defendant's behalf testified that Teachman did not have a good reputation for truthfulness." Id., 255 (*Flynn, J.,* dissenting). Thus, the other witnesses presented by the state did not offer strong testimony against the defendant, and, accordingly, we conclude that the improper admission of the police officers' testimony likely affected the verdict and undermined confidence in the fairness of the verdict.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case for a new trial.

In this opinion the other justices concurred.