## PAULA W. DEEGAN ET AL. *v.* OLLIE J. SIMMONS ET AL.
## (AC 27125)

Bishop, Rogers and Hennessy, Js.

Argued November 15, 2006—officially released April 17, 2007

*Philip F. von Kuhn*, for the appellants (plaintiffs).

*Julia B. Morris*, for the appellees (defendants).

*Opinion*

BISHOP, J. In this personal injury action arising from a motor vehicle accident, the plaintiffs, Paula W. Deegan and Michael G. Deegan,[1] appeal from the judgment of the trial court, rendered after a jury trial, in favor of the defendants, Ollie J. Simmons and Robert DeMagistris.[2] On appeal, the plaintiffs claim that the court improperly (1) admitted evidence concerning the speeds at which other motorists customarily drive, (2) allowed a police officer to testify as to his practice concerning the circumstances in which he would issue tickets to motorists, (3) granted the defendants' motion in limine to preclude evidence of a laboratory report indicating that Simmons tested positive for marijuana and (4) disallowed an offer of proof concerning Simmons' familiarity with an alleged tradition among marijuana users. We agree with the plaintiffs on claims one and two and disagree regarding claims three and four. Accordingly, we reverse the judgment of the trial court and remand the matter for a new trial.[3]

The following factual and procedural history is relevant to our discussion of the issues on appeal. This

---

[1] Michael Deegan is the husband of Paula Deegan. He was not involved in the accident but claimed bystander emotional distress and loss of consortium.

[2] The truck involved in the accident in question was owned by DeMagistris, who employed Simmons, the operator.

[3] Because we agree with the plaintiffs on the first two issues, the matter must be remanded for a new trial. We nevertheless address issues three and four, as they are likely to arise again at the retrial.

case arises from a motor vehicle accident that occurred on April 20, 2000, in Meriden. Paula Deegan, while operating a sport utility vehicle, was traveling on Murdock Avenue approaching its intersection with Research Parkway. Simmons was operating a tractor-trailer truck on Research Parkway. The accident occurred when Paula Deegan proceeded from a stop sign and attempted to take a left turn onto Research Parkway, traveling into the path of the truck operated by Simmons. The plaintiffs claim that the accident was due to the negligence of Simmons. The defendants denied that Simmons was negligent and, in turn, alleged a special defense of contributory negligence by Paula Deegan.

At trial, the court charged the jury on the applicable law following the conclusion of the evidence. Acting on the agreement of counsel for the parties, the court provided the jury with verdict forms and interrogatories. Interrogatory one asked the jurors to answer whether the plaintiffs proved by a fair preponderance of the evidence that Simmons was negligent in the operation of the tractor-trailer truck. In accordance with the instructions contained in the interrogatories, the jury, in returning a defendants' verdict, was not required to proceed beyond the first interrogatory to answer the remaining questions. The jury, after deliberating, answered "No" to interrogatory one and returned a verdict for the defendants. On June 3, 2005, the plaintiffs filed a motion to set aside the verdict and for a new trial, claiming that the court made various incorrect evidentiary rulings that are the subject of this appeal. On November 15, 2005, the court denied the plaintiffs' motion. This appeal followed. Additional facts will be set forth as necessary.

Because all four claims on appeal concern the court's evidentiary rulings, we, as a threshold matter set forth

the standard by which we review the trial court's determinations concerning the admissibility of evidence. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . . Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Finally, the standard in a civil case for determining whether an improper ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 446–47, 899 A.2d 563 (2006).

I

The plaintiffs' first claim is that the court improperly allowed the defendants to introduce evidence regarding the speeds at which other motorists typically drive on Research Parkway. Specifically, the plaintiffs argue that Leroy Harris, the investigating police officer, and Matthew Potter, an eyewitness to the subject accident, should not have been allowed to testify as to speeds at which other motorists customarily drive on Research Parkway because the testimony was irrelevant and harmful. We agree.

The following additional facts are necessary for our disposition of the plaintiffs' claim. Because a central issue at trial was whether Simmons drove the vehicle in a negligent manner, both parties presented expert

testimony regarding the speed at which Simmons was traveling at the point of impact.[4] Although the plaintiffs' expert, George Ruotolo, testified that Simmons was traveling at a speed of forty nine to fifty one miles per hour at the point of impact, the defendants' expert, Peter Plante, stated that Simmons was traveling at a speed of 39.03 miles per hour. Subsequently, when Harris testified, the following colloquy took place:

"[The Defendants' Counsel]: In your experience with that road, what is the typical speed people travel over—

"[The Plaintiffs' Counsel]: Objection, if Your Honor please.

"The Court: Basis of the objection?

"[The Plaintiffs' Counsel]: It's not relevant to this case. The issue is how fast was this tractor-trailer going.

"The Court: Well, I think there are, I don't think that that's the proper question. I think there is a, there are other questions that could be asked about what he observes on this roadway. I don't think he can say what's the typical speed of any particular motorist.

"[The Defendants' Counsel]: Officer, what have you observed about the traffic on Research Parkway?

"[The Plaintiffs' Counsel]: Objection, relevance.

"The Court: Overruled. This is a question of reasonable speed, as well. You can answer that question, officer.

"[The Witness]: Average speed of vehicles, depending on the time, can average anywhere between forty to fifty miles an hour. Sometimes, later at night, that will increase because there's less traffic.

"[The Defendants' Counsel]: Above fifty?

---

[4] The speed limit was forty miles per hour.

"[The Witness]: Correct."

When the defendants' counsel revisited the same issue through his direct examination of Potter, the following colloquy ensued:

"[The Defendants' Counsel]: Okay. Based on your frequent experience on Research Parkway, what would the typical flow of traffic be at that location?

"[The Plaintiffs' Counsel]: Objection, if Your Honor please, relevance.

"The Court: You travel it twice per day?

"[The Witness]: Yes, I do.

"The Court: Were you traveling it twice per day or frequently on April 20, 2000?

"[The Witness]: Well, I traveled it in the morning and in the afternoon, when I got out of work.

"The Court: Understood. And that was the same in April of 2000?

"[The Witness]: Yes.

"The Court: And you, obviously, were in the flow of traffic at those two times a day?

"[The Witness]: Yes.

"The Court: And so you're familiar with the speed [of] that flow of traffic normally? I don't know about on April 20, 2000, but normally proceeded on that roadway.

"[The Witness]: Yes, sir.

"The Court: Go ahead.

"[The Defendants' Counsel]: Sir, what was the normal speed you observed the flow of traffic traveling on Research Parkway, typically?

"[The Witness]: Forty-five, fifty."

"When evidence of a common practice or custom is offered, the question whether it will be of sufficient assistance in determining the ultimate question of negligence to make it properly admissible, in view of the collateral issues which may be raised and the danger of its misuse, must rest in the discretion of the court." *Eamiello* v. *Piscitelli*, 133 Conn. 360, 369, 51 A.2d 912 (1947). "The general rule unquestionably is that a party charged with negligent conduct will not be allowed to show that such conduct was common or customary among those . . . placed under like circumstances and owing the same duties." (Internal quotation marks omitted.) Id., 367.

"A common practice or custom is not permitted to be shown for the purpose of establishing that practice or custom as the standard upon the basis of which conduct is to be held negligent or not negligent, but merely as evidence for the assistance of the trier in determining whether the conduct of the person charged with negligence was in the particular situation that of a reasonably prudent person. . . . In such a case it may be admitted as evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not. . . . The distinction between a proper and improper use of such evidence is often not easy to draw, and there is danger that a *trier will give too much weight to the evidence; and this would be particularly true of a jury*, no matter how strongly [it] may be cautioned not to do so. . . .

"At the foundation of the rule lies the idea that the act constituting the subject of the custom is one in respect to which the manner of doing it is not a matter of common knowledge. If this were lost sight of, and evidence allowed to prove the customary way of doing anything, however common, a rule which, restricted

within reasonable limits, promotes the due administration of justice, would be quite likely to have the very opposite effect. Where the evidence in a case is such that the trier, applying to the facts found proven the common knowledge and experience of men in general, has an adequate basis for determining whether the conduct in question is that of an ordinarily prudent person, the practice of other persons would serve no sufficient purpose to justify its admission, especially in a jury trial where it might create confusion as to the ultimate test to be applied. . . . When the question is, did a person use ordinary care in a particular case, the test is the amount of care ordinarily used by men in general, in similar circumstances. If it be matter of common knowledge, such amount of care needs no proof—the jury take notice of it." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 367–68.

In this matter, a central issue regarding liability was whether Simmons was traveling at an unreasonable rate of speed at the moment of impact. The defendants, through the testimony of Harris and Potter, introduced evidence regarding the speeds at which other motorists drive on Research Parkway to support their position that Simmons was driving the truck at a reasonable speed at the time of the accident. Because we believe the issue of whether Simmons was driving his vehicle at an unreasonable speed at the time of the accident was, in this instance, within the common knowledge and experience of the jury, we conclude that this evidence was improperly admitted by the court.

This was not an issue beyond the common knowledge or experience of the jury or too complicated a problem requiring evidence of custom and practice to assist the jury. Instead, the conduct at hand involved the question of whether Simmons acted as a reasonably prudent person. Thus, there was no sufficient purpose to justify the admission of such evidence. Moreover, this was the

precise scenario that our Supreme Court envisioned in *Eamiello* concerning whether a jury in a civil case may give too much weight to custom or practice evidence. Thus, we conclude that the court improperly admitted Potter's and Harris' testimony concerning common practice or custom. Our inquiry, however, does not end with this assessment. We must next discuss whether the court's ruling was harmful.

As noted, the test on review in a civil case regarding evidentiary rulings is whether the court's improper ruling likely affected the result. Here, the jury was faced with the question of whether Simmons was traveling at an unreasonable rate of speed at the moment of impact. The jury heard testimony from two persons, one a police officer, stating that it was typical or customary for people to drive above the speed limit. The jury also heard conflicting testimony from the experts regarding the speed at which Simmons was traveling. Thus, even if the jury believed the plaintiffs' expert that Simmons was traveling fifty miles per hour at the time of the accident, the testimony that other motorists customarily drive at that speed would have likely influenced their opinion as to whether Simmons was driving unreasonably. Thus, we conclude that the court's evidentiary ruling on this issue was both improper and harmful.

## II

The plaintiffs' next evidentiary claim is that the court abused its discretion by allowing Harris to testify that he would not ticket motorists for traveling up to fifteen miles per hour over the forty mile per hour posted speed limit on Research Parkway. Specifically, the plaintiffs argue that the court improperly permitted the defendants to present opinion evidence on an ultimate issue, which is a question for the jury to determine. We agree.

The following additional facts are pertinent to this issue. After the examination of Harris regarding the speeds at which other motorists travel on Research Parkway, the following colloquy occurred during which the defendants' counsel inquired whether Harris would ticket someone for traveling fifty miles per hour on Research Parkway, the speed the plaintiffs' expert testified that Simmons was traveling when the subject accident occurred:

"[The Defendants' Counsel]: And if vehicles, you are, at least, in this period responsible for the enforcement of the laws in the town of Meriden?

"[The Witness]: Correct.

"[The Defendants' Counsel]: All right. Would you ticket for somebody traveling at fifty miles per hour on Research Parkway?

"[The Plaintiffs' Counsel]: Objection, if Your Honor please.

"The Court: Overruled. We're talking about him and his experience as a police officer.

"[The Witness]: Would I ticket? Depending on the speed.

"[The Defendants' Counsel]: If somebody was going fifty miles an hour on Research Parkway?

"[The Witness]: If it was over, I usually ticket over fifteen miles over the posted speed limit.

"[The Defendants' Counsel]: All right. Why is that?

"[The Witness]: Because I feel it's reasonable. There's other officers who go maybe twenty miles an hour. It depends on the officer."

We begin with § 7-3 (a) of the Connecticut Code of Evidence, which provides in relevant part that, "[t]estimony in the form of an opinion is inadmissible if it

embraces an ultimate issue to be decided by the trier of fact . . . . As the commentary to § 7-3 indicates, the rule adopts the common-law bar against admission of a witness' opinion on an ultimate issue in a case."[5] (Internal quotation marks omitted.) *State* v. *Finan*, 275 Conn. 60, 66, 881 A.2d 187 (2005). "[T]he phrase ultimate issue is not amenable to easy definition."[6] (Internal quotation marks omitted.) Id., 66. An ultimate issue is "one that cannot reasonably be separated from the essence of the matter to be decided [by the trier of fact]." (Internal quotation marks omitted.) Id.

Here, it is undisputed that an ultimate issue at hand was the reasonableness of the speed at which Simmons was driving at the time of the accident. Thus, the question is whether Harris' testimony constituted an opinion on this ultimate issue. Although the defendants argue that Harris' testimony was factual[7] in nature and not opinion testimony, we conclude that his testimony, taken as a whole and given its logical effect, was an

[5] Moreover, the commentary to § 7-3, which discusses the possibility that our Supreme Court relaxed the restriction on the admissibility of such testimony in *State* v. *Spigarolo*, 210 Conn. 359, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), ultimately concludes that "any such exception is rejected in favor of a complete ban on the admissibility of such testimony." (Internal quotation marks omitted.) *State* v. *Finan*, 275 Conn. 60, 69, 881 A.2d 187 (2005).

[6] Although "the term ultimate issue is often found in our decisional law, it is not amenable to easy definition. We find help in the Ballentine's Law Dictionary definition of the allied term ultimate fact as [a] fact upon the existence or nonexistence of which liability is to be determined. . . . The final and resulting fact reached by processes of legal reasoning from the detailed or probative facts, as distinguished from evidentiary facts and conclusions of law. . . . Ballentine's Law Dictionary (3d Ed. 1969). Thus, the idea of an ultimate issue or fact is that it is interwoven with the core of the fact to be proven or elemental to it." (Internal quotation marks omitted.) *State* v. *Finan*, 82 Conn. App. 222, 231, 843 A.2d 630 (2004), rev'd on other grounds, 275 Conn. 60, 881 A.2d 187 (2005).

[7] Even if we accept the defendants' assertion that Harris' testimony was factual and not an opinion, we still would deem that testimony irrelevant. We believe that the speed at which Harris tickets motorists is simply not probative of whether Simmons was negligent.

opinion on the ultimate issue in the case. Thus, it should not have been admitted.

Harris' testimony regarding the speeds he considers to constitute a chargeable offense constituted no more than an indirect or disguised opinion of whether Simmons' actions were unreasonable. In essence, Harris was suggesting by implication that he does not ticket drivers for speeds up to fifteen miles per hour over the speed limit because he believes it is reasonable for motorists to drive at such speeds on Research Parkway. Thus, in the guise of a factual representation, Harris was permitted to suggest that Simmons was traveling at a reasonable speed. Indeed, when asked why he usually tickets someone driving more than fifteen miles per hour over the posted speed limit, Harris responded "[b]ecause I feel it's reasonable." Accordingly, we conclude that under the facts of the present case, the court improperly admitted Harris' testimony because it constituted improper opinion evidence.

As previously stated, having determined that the court improperly allowed this evidence, we next turn to the harmfulness of this evidentiary ruling. In this instance, we conclude that the court's ruling was harmful. Here, as a result of improperly admitted evidence, the jury could have believed that Simmons was driving over the speed limit but could also have concluded that Simmons was acting reasonably on the basis of this police officer's testimony. Additionally, this opinion testimony on an ultimate issue likely served to invade the jury's province as the finder of fact. Thus, we conclude that the admission of this testimony was both incorrect and harmful.

### III

Next, the plaintiffs contend that the court improperly precluded them from introducing evidence that Simmons allegedly tested positive for marijuana at the hospital after the accident. Specifically, the plaintiffs argue

that the court improperly granted the defendants' motion in limine to preclude evidence of a laboratory report indicating an abnormal result in a test known as the cannabinoid screen. In response, the defendants argue that, even assuming this evidence was relevant, (1) expert testimony was necessary to establish the accuracy and reliability of the report and to interpret and explain it, and (2) its prejudicial effect greatly outweighed its probative value. We agree with the defendants.

The following additional facts and procedural history are relevant to our discussion of this issue. In the course of pretrial discovery, it was learned that on the day of the accident, Simmons was taken by ambulance to Midstate Medical Center in Meriden where a test for a cannabinoid in his system resulted in a finding of "abnormal." On that basis, the plaintiffs' complaint was amended to include the allegation that Simmons was operating a vehicle under the influence of marijuana. The defendants subsequently filed a motion in limine on April 26, 2005, to exclude the laboratory report. The court granted the defendants' motion in limine.

The plaintiffs first argue that the laboratory report itself should have been admitted into evidence without expert testimony explaining or supporting it. In support of this proposition, the plaintiffs rely on *State* v. *Clark*, 260 Conn. 813, 824, 801 A.2d 718 (2002), in which the court held that expert testimony was not needed for the jury to consider the *effects* of marijuana use on the ability of a witness to observe and relate facts. In that case, however, the witness testified and admitted to smoking five marijuana cigarettes shortly before the incident in question. Id., 817. Thus, *Clark* pertains to a situation in which drug use has been established, and the issue to be determined was the *effect* it had on the user. The facts in this case, however, are clearly distinguishable from those in *Clark* because here,

unlike in *Clark*, there was no evidence that Simmons had used marijuana during any time period relevant to the timing of the accident. More to the point is the holding of *LePage* v. *Horne*, 262 Conn. 116, 809 A.2d 505 (2002). There, the court opined that "[e]xpert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." (Internal quotation marks omitted.) Id., 125.

In the case at hand, the court correctly noted that there was no evidence that marijuana had been used prior to the accident and no evidence that Simmons was impaired while driving his vehicle. Without corroborating evidence, the laboratory report itself would not explain: (1) how long a cannabinoid substance stays in a person's system; (2) the amount of cannabinoid in Simmons' system at the time of the accident; (3) the relationship between cannabinoid and marijuana; (4) what other products might cause a positive result for a cannabinoid substance; (5) whether urine tests could produce a false positive result and, if so, how often; (6) the possibility for contamination of the sample; and (7) the chain of custody of any sample. These are not subject areas within the common knowledge of the jury and yet each of these factors has evidentiary significance. Thus, the court correctly concluded that the laboratory report indicating an "abnormal result" for a cannabinoid screen was inadmissible absent explanatory expert opinion. Accordingly, the court did not abuse its discretion in excluding the laboratory report.

Furthermore, as noted by our Supreme Court, evidence, even if relevant, may be excluded by the court if "its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence. Conn. Code Evid. § 4-3." (Internal quotation

marks omitted.) *State* v. *Cortes*, 276 Conn. 241, 254, 885 A.2d 153 (2005). "The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of evidence is . . . outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only whe[n] an abuse of discretion is manifest or whe[n] injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Peeler*, 267 Conn. 611, 637, 841 A.2d 181 (2004).

Our review of the record supports a conclusion that the laboratory report's potential for prejudicing the defendants and confusing the jury well outweighed its probative value, if any. To permit evidence of a laboratory result indicating an abnormal result for a cannibinoid, without any further explanation of that finding, would be highly prejudicial to the defendants. As noted, the laboratory report related only that the testing of Simmons produced an "abnormal test result," and nothing further. This, alone, is an ambiguous finding. The report did not indicate that Simmons was under the influence of marijuana at the time of the accident, and there was no other evidence adduced at trial that would support a reasonable belief that Simmons was operating his vehicle while he was under the influence of any drug or controlled substance. Thus, this evidence, if admitted, would likely have confused and prejudiced the jury against the defendants. Accordingly, we conclude that the court did not abuse its discretion in determining that the laboratory report should not be admitted.

## IV

Finally, the plaintiffs argue that the court improperly disallowed an offer of proof regarding Simmons' knowledge of the term "420," which purportedly relates to a tradition among marijuana users of smoking marijuana on the date, April 20. Specifically, the plaintiffs argue that if they had been permitted to question Simmons outside the presence of the jury regarding "420," Simmons might have admitted to knowledge and participation in the traditional behavior of marijuana users on April 20. The defendants argue that the evidence would have been irrelevant and prejudicial. We agree with the defendants.

"Evidence is admissible only if it is relevant. . . . The trial court is given broad discretion in determining the relevancy of evidence and its decision will not be disturbed absent a clear abuse of that discretion." (Citations omitted; internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 569, 657 A.2d 212 (1995). "Section 4-1 of the Connecticut Code of Evidence provides in pertinent part that evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *Shepherd* v. *Mitchell*, 96 Conn. App. 716, 721, 901 A.2d 1230 (2006). Moreover, "[t]he proffering party bears the burden of establishing the relevance of the offered testimony. Unless a proper foundation is established, the evidence is irrelevant." (Internal quotation marks omitted.) *Drea* v. *Silverman*, 55 Conn. App. 107, 109, 737 A.2d 990 (1999). "Nevertheless [and as stated previously], relevant evidence may be excluded by the court if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury . . . ."

(Internal quotation marks omitted.) *Shepherd* v. *Mitchell*, supra, 721.

Here, the plaintiffs did not satisfy the burden of establishing the relevance of this proffered testimony. The plaintiffs offered no more than mere speculation that if Simmons was asked about "420," he would testify that he knew that April 20, the day of the accident, was "National Smoking Day" and that he smoked marijuana prior to the accident because of that tradition. A trial is not an opportunity for counsel to embark on a fishing expedition or to induce fact finders to engage in speculation. Without more foundation regarding Simmons' alleged marijuana use, the court properly exercised its discretion to exclude this proffer.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.