MARK LINGENHELD *v.* DESJARDINS
WOODWORKING, INC.
(AC 27608)

Flynn, C. J., and Gruendel and Berdon, Js.

164

Argued September 5, 2007—officially released January 1, 2008

*Joseph A. LaBella,* for the appellant (defendant).

*Kathryn Calibey,* with whom was *Michael C. Jainchill,* for the appellee (plaintiff).

*Opinion*

BERDON, J. This appeal arises out of an action brought by the plaintiff, Mark Lingenheld, against the defendant, Desjardins Woodworking, Inc., a corporation that is owned by Peter Desjardins,[1] for damages resulting from the defendant's allegedly negligent conduct. Following a trial, the jury returned a verdict in favor of the plaintiff on his claim of negligence and awarded him $342,879.43. The court rendered judgment in accordance with the jury verdict, from which the defendant appeals. On appeal, the defendant claims that the court improperly (1) admitted three pieces of wood into evidence, (2) excluded two reports prepared by the department of labor's division of occupational safety and health (department) from evidence, (3) admitted the videotaped testimony of the plaintiff's treating physician and (4) instructed the jury regarding

---

[1] Although the record indicates that the defendant corporation is owned by Desjardins, it does not indicate the extent of his ownership.

noneconomic damages. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The plaintiff, a subcontractor, was engaged by the defendant to assist with cabinet installation. As part of the cabinet construction process, the defendant used a fifteen horsepower Martin T-25 table shaper (table shaper)[2] to construct cabinet components. The defendant purchased this machine sometime in May, 1995, and it was operated regularly by the defendant's employees. On February 14, 2003, Michael Kelmelis, an employee of the defendant, was utilizing the table shaper to convert blanks of white oak into finished cabinet molding. The plaintiff had arrived at the shop earlier that morning to pick up these materials. As Kelmelis inserted a blank into the table shaper, the white oak broke apart and was ejected nineteen or twenty feet across the room into a walkway, where it struck the plaintiff's right hand. Upon impact, the blank of white oak immediately shattered into several pieces. As a result of this incident, the plaintiff sustained three fractures, contused tendons and a partially transected radial sensory nerve of the right hand. Subsequently, the plaintiff underwent surgery. He suffered permanent injuries and significant functional impairment to his right hand.

The plaintiff brought an action against the defendant, alleging that his injuries were caused by the defendant's negligence. The jury returned a verdict in favor of the plaintiff and awarded him $352,807.96 in damages. This

---

[2] A table shaper is a piece of woodworking equipment with a rotating cutting head that projects above the table surface of the machine. It is used to cut profiles into wood for molding, chair rails and other products. The machine uses a power feed, which consists of rollers that guide a wood blank across the cutting head and ultimately moves the finished product away from the machine. The cutting head is capable of rotating at 9000 revolutions per minute.

award included $28,807.96 for past economic damages, $24,000 for future economic damages and $300,000 for noneconomic damages. After collateral source reductions, the court rendered judgment in the amount of $342,879.43. This appeal followed. Additional facts and procedural history will be provided where pertinent.

I

The defendant first claims that the court abused its discretion by admitting three pieces of white oak into evidence as those that struck the plaintiff's hand. Specifically, the defendant argues that the plaintiff failed to lay an adequate foundation for admission of this wood because, at trial, Kelmelis, through whom the plaintiff sought to introduce the wood fragments, testified that he was uncertain if the proffered wood was the actual white oak that hit the plaintiff. We disagree.

The following additional facts are necessary to the resolution of the defendant's claim. After the blank of white oak broke apart and hit the plaintiff, he immediately began bleeding. At trial, the plaintiff testified that after being struck in the hand, he asked Kelmelis to collect several pieces of white oak that he had observed on the floor.[3] The plaintiff testified that approximately one week later, Kelmelis gave the plaintiff three pieces of wood. During his direct examination, Kelmelis testified that immediately before the plaintiff's injury, he

---

[3] During his direct examination, to lay a foundation for the admission of the white oak fragments, the plaintiff sought to introduce testimony to show that after he was hit by the white oak, he asked Kelmelis to save the piece of wood that struck his hand. The defendant argues that the court improperly admitted this testimony under the residual exception to the hearsay rule. Even if we were to decide that the proffered testimony was not admitted properly under the residual exception, we conclude that this utterance, which the plaintiff made several minutes after the incident as he was being carried out of the defendant's shop on a stretcher, was admissible under the spontaneous utterance exception to the hearsay rule. "This court may sustain the admission of evidence on any proper ground that exists for its admission." *State* v. *Torelli*, 103 Conn. App. 646, 662, 931 A.2d 337 (2007).

was utilizing the table shaper to shape pieces of white oak, a hard, brittle wood. Nearly three years after the incident, when counsel for the plaintiff asked Kelmelis whether he recognized the piece of wood offered at trial as the piece of white oak that hit the plaintiff, Kelmelis testified that he was not sure. He was able, however, to identify the wood as white oak that was of similar dimensions to the piece that he was working on immediately before the February 14, 2003 incident. During direct examination, the plaintiff pointed out a substance that he identified as his dried blood on the wood. After observing these marks, the plaintiff testified that these pieces had comprised the object that struck his hand. Subsequently, the court admitted the white oak fragments as a full exhibit, concluding that the defendant's objection related to the weight rather than to the admissibility of the proffered items.

We note that "[i]t is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 779–80, 882 A.2d 653 (2005). "To establish a foundation for admission, [a]n item offered as real evidence must be positively identified as the actual item in question. This can be done by establishing unique or distinguishable configurations, marks, or other characteristics, or by satisfactory proof of the item's chain of custody from the time of the incident to the time of trial." (Internal quotation marks omitted.) *State* v. *Dearborn*, 82 Conn. App. 734, 744–45, 846 A.2d 894, cert. denied, 270 Conn. 904, 853 A.2d 523 (2004). "Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [challenging party] of substantial prejudice or injustice." (Internal quotation

marks omitted.) *Drea* v. *Silverman,* 55 Conn. App. 107, 109, 737 A.2d 990 (1999).

In the present case, the court heard testimony from the plaintiff and Kelmelis. Although Kelmelis testified that he was uncertain as to whether the white oak offered by the plaintiff was the actual wood that was ejected from the table shaper, he was able to confirm that the wood offered at trial was the same type of wood, white oak, that he had been using to make cabinet molding on the morning of February 14, 2003. Kelmelis also testified that the proffered white oak was of similar dimensions to the white oak that was ejected from the table shaper. Moreover, the plaintiff was able to point out unique marks on the wood that he identified as his blood.[4] Accordingly, in light of this testimony, we cannot say that the court abused its discretion in admitting the pieces of white oak into evidence.

Furthermore, we fail to understand the evidentiary significance of whether these were the specific fragments of white oak that struck the plaintiff's hand. It is undisputed that white oak ejected from the table shaper hit the plaintiff. Indeed, in its brief, the defendant concedes that "[a]t the moment the wood was ejected from the [table] shaper, the plaintiff, who was present to pick up the molding, was in a walkway near the machine and was struck in the right hand by the ejected wood." Whether the wood proffered at trial comprised the actual piece of wood that hit the plaintiff has no bearing on the question of the defendant's liability. We note that "[t]o be reversible, evidentiary error must be both wrong and harmful." (Internal quotation marks omitted.) *Constantine* v. *Schneider,* 49 Conn. App. 378, 392, 715 A.2d 772 (1998).

[1] During voir dire of the plaintiff, his counsel asked: "Mr. Lingenheld, looking at exhibit C for identification, do you recognize these three pieces that have now been taped together as the same pieces of wood you saw on the floor after you were hit?" The plaintiff replied: "That's correct."

## II

Next, the defendant claims that the court abused its discretion by precluding it from introducing into evidence two department reports that were prepared following the department's inspections of the defendant's woodworking shop. Specifically, on appeal, as it did at trial, the defendant contends that these reports, which failed to disclose any safety concerns relating to the table shaper, were relevant because they tended to establish that it did not have knowledge of the allegedly dangerous condition created by the placement of the table shaper[5] and, therefore, suggested by implication that the placement and operation of the table shaper were reasonable. In response, the plaintiff argues that even if the reports were relevant, their probative value was greatly outweighed by their prejudicial effect. We agree with the plaintiff.

The following additional facts and procedural history are relevant to our discussion of this issue. In the course of pretrial discovery, it was learned that on December 21, 1995, and again on July 5, 1996, the defendant had invited the department to its shop to provide an onsite safety survey and consultation. After inspecting the defendant's premises, the department issued two reports. The December, 1995 report was prepared by Bernard Vignali, a safety consultant, and the July, 1996 report was prepared by John Rosa, an occupational hygienist. In these reports, a number of violations and concerns were identified; however, none of the resulting safety recommendations mentioned the table shaper. Subsequently, the plaintiff filed a motion in limine to preclude the department reports. The court

[5] Desjardins conceded at trial that if he had read the maintenance manual that he received upon purchasing the table shaper, he would have known that there was a risk of kickback and that the location of the table shaper was unsafe.

granted the plaintiff's motion, finding that the reports would unduly prejudice the plaintiff.

"[A]s noted by our Supreme Court, evidence, even if relevant, may be excluded by the court if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or considerations of undue delay, waste of time or needless presentation of cumulative evidence. Conn. Code Evid. § 4-3. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value. . . . Finally, [t]he trial court's discretionary determination that the probative value of the evidence is . . . outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only whe[n] an abuse of discretion is manifest or whe[n] injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Deegan* v. *Simmons*, 100 Conn. App. 524, 538–39, 918 A.2d 998, cert. denied, 282 Conn. 923, 925 A.2d 1103 (2007); see also *Beech Aircraft Corp.* v. *Rainey*, 488 U.S. 153, 168, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988) (noting that federal Occupational Safety and Health Administration investigatory report properly excluded under Federal Rules of Evidence when trial judge has determined contents of report irrelevant or unfairly prejudicial); *Hayes* v. *Camel*, 283 Conn. 475, 483–86, 927 A.2d 880 (2007).

In the present case, our review of the record supports the court's conclusion that the reports' potential for prejudicing the plaintiff and confusing the jury well outweighed their probative value, if any. To permit evidence of the department's inspections, without any

attendant testimony relating to the scope of the investigation or the qualifications of the individual who composed the report, would have been highly prejudicial to the plaintiff. See *Deegan* v. *Simmons*, supra, 100 Conn. App. 539. As we have noted, the reports contained several recommendations designed to create a safer workplace. The reports, however, did not include any recommendations relating to the table shaper. Thus, this evidence, if admitted, would likely have confused and prejudiced the jury against the plaintiff. Accordingly, we conclude that the court did not abuse its discretion in excluding the reports.

### III

The defendant's final two claims relate to the court's admission of the testimony of Andrew Caputo, the plaintiff's treating physician. The defendant first argues that the court improperly admitted Caputo's testimony regarding the plaintiff's need for future surgeries. Alternatively, the defendant claims that even if Caputo's testimony was admitted properly, the court improperly instructed the jury regarding noneconomic damages by failing to instruct the jury to consider the probable outcome of the plaintiff's future surgery on the plaintiff's condition. We address these arguments in turn.

### A

The defendant first claims that the court improperly admitted Caputo's testimony regarding the plaintiff's need for future surgeries. Specifically, the defendant argues that the plaintiff failed to establish the foundational requirements necessary to satisfy the "standard of admissibility" governing evidence of future medical procedures. We are not persuaded.

The following additional facts are relevant to the resolution of the defendant's claim. At trial, the jury viewed Caputo's videotaped deposition. During direct

examination, Caputo testified that he had "discussed the idea of doing" a dorsal wrist arthroplasty and arteriogram and that he would "consider [having the plaintiff get] the arteriogram . . . and . . . the dorsal wrist arthroplasty." Caputo further testified that it was reasonably probable that these surgeries would improve the plaintiff's condition. According to Caputo, these future surgeries would reduce the plaintiff's present impairment rating of 35 percent to 15 or 20 percent, which would represent nearly a 50 percent reduction in the plaintiff's disability. During trial, citing *Marchetti v. Ramirez*, 240 Conn. 49, 688 A.2d 1325 (1997), counsel for the defendant moved to strike this testimony, arguing that it was not admissible as evidence of future economic damages because it did not indicate specifically that it was reasonably probable that the plaintiff would undergo the future medical procedures. The court denied the defendant's motion, concluding that the issue of whether it was reasonably probable that the plaintiff would require future medical procedures was a question of fact for the jury to decide.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . With respect to expert testimony, this court has observed that [t]he trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Citation omitted; internal

quotation marks omitted.) *Porter* v. *Thrane*, 98 Conn. App. 336, 339–40, 908 A.2d 1137 (2006).

In support of its claim on appeal, the defendant contends that *Marchetti* v. *Ramirez*, supra, 240 Conn. 49, requires, as a requisite to the admissibility of an expert's testimony regarding future medical expenses, an expert to utilize clear language indicating that it is reasonably probable that the plaintiff will undergo such future medical procedures.[6]

We conclude that *Marchetti* establishes no such rule of admissibility. In reaching this conclusion, we note that "[f]uture medical expenses do not require the same degree of certainty as past medical expenses . . . ." (Internal quotation marks omitted.) *Hamernick* v. *Bach*, 64 Conn. App. 160, 170, 779 A.2d 806 (2001). In *Marchetti* v. *Ramirez*, supra, 240 Conn. 49, our Supreme Court acknowledged that "[i]t is well established that [i]n assessing damages in a tort action, a trier is not concerned with possibilities but with reasonable probabilities. . . . [A]s to future medical expenses, the *jury's determination must be based upon an estimate of reasonable probabilities*, not possibilities." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 54. Accordingly, "[t]he evidence at trial must be sufficient to support a reasonable likelihood that future medical expenses will be necessary." (Internal quotation marks omitted.) *Calvi* v. *Agro*, 59 Conn. App. 732, 736, 757 A.2d 1260 (2000). "Whether an

---

[6] "We recognize that [i]n awarding future medical expenses, a jury's determination must be based upon an estimate of reasonable probabilities, not possibilities." (Internal quotation marks omitted.) *Madsen* v. *Gates*, 85 Conn. App. 383, 396, 857 A.2d 412, cert. denied, 272 Conn. 902, 863 A.2d 695 (2004). In its brief on appeal, however, the defendant has not argued that the court improperly denied its motion to set aside the verdict because the evidence presented at trial was inadequate to establish that there was a reasonable probability that the plaintiff would incur future economic damages.

expert's testimony is expressed in terms of a reasonable probability . . . does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." *Struckman* v. *Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987).

In the present case, Caputo testified that he had discussed the possibility of future surgery with the plaintiff and believed that it was reasonably probable that the future surgical procedures would improve the plaintiff's condition. This testimony was both relevant and probative as to the extent of the plaintiff's injuries. Therefore, such testimony, when considered in conjunction with the plaintiff's testimony indicating that he would seek the surgeries in the future, aided the jury in determining whether it was reasonably probable that the plaintiff would undergo the dorsal wrist arthroplasty and arteriogram in the future.[7] Accordingly, we conclude that the court did not abuse its discretion in admitting Caputo's testimony.

B

The defendant next contends that the court improperly instructed the jury regarding noneconomic damages by failing to instruct the jury clearly to consider the probable outcome of the plaintiff's future surgery on the plaintiff's condition. Specifically, the defendant asserts that by failing to include an instruction regarding the law's prohibition against double recovery, the court improperly permitted the jury to award noneconomic

---

[7] During cross-examination of the plaintiff, the following testimony was elicited:

"[The Defendant's Counsel]: And when you feel like your business is in a position that you can take the time off, then you will pursue the surgery as Dr. Caputo talked about?

"[The Plaintiff]: I believe so, yeah."

damages without consideration of the effect of the plaintiff's future surgery on the plaintiff's future pain and suffering. The defendant contends that this alleged impropriety entitles it to a new trial. We disagree.

"As a preliminary matter, we identify the applicable standard of review and set forth the legal principles that govern our resolution of the defendant's instructional [claim]. A challenge to the validity of jury instructions presents a question of law over which this court has plenary review." *Pickering* v. *Rankin-Carle*, 103 Conn. App. 11, 14, 926 A.2d 1065 (2007). "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 572–73, 898 A.2d 178 (2006). Furthermore, "[i]t is axiomatic . . . that not every error is harmful. . . . [Our Supreme Court has] often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 243, 828 A.2d 64 (2003).

To apply these principles in the present case, we must examine the defendant's requested charge, the

actual jury charge and the defendant's subsequent objection to the charge. In its supplemental request to charge, the defendant requested an instruction pertaining to double recovery. This proposed instruction included language suggesting that "the plaintiff is entitled to damages not based upon his current condition but based upon his condition after he has undergone reasonable additional care." During its subsequent charge to the jury, the court stated that "the plaintiff's noneconomic damages should be decreased if he underwent—or would be decreased if he underwent [the] two operations recommended by . . . Caputo." In its instruction to the jury on the plaintiff's duty to mitigate damages, the court next stated that if "the defendant has not proven a failure to mitigate damages, you would award the plaintiff noneconomic damages for the full extent of his present suffering and impairment."

On appeal, as it did at trial, the defendant essentially challenges the sequence of these statements, claiming that these instructions could have caused the jury to consider the reduction in the plaintiff's impairment "only if it found that the defendant had proven that it was unreasonable for [the plaintiff] not to have undergone that treatment." The defendant objected to this portion of the charge, preserving the issue for appellate review.[8]

We first note that "[t]he amount of damages awarded is a matter peculiarly within the province of the jury . . . . [I]t is the jury's right to accept some, none or all of the evidence presented." (Internal quotation marks

[8] The defendant's objection claimed that "the jury [was] free to find that [the plaintiff] could at some point undergo additional surgery, which would have the probable consequence of reducing his impairment rating and thus reducing the associated pain and suffering, but that he could be compensated fully for—he could be compensated for the full cost of that surgery as well as the full cost of his current impairment."

omitted.) *Fontana* v. *Zymol Enterprises, Inc.*, 95 Conn. App. 606, 611, 897 A.2d 694 (2006). General Statutes § 52-572h (a) (2) defines noneconomic damages as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering . . . ."

Our Supreme Court has determined that it is the responsibility of the trial court to adapt the law to the case in question correctly and to provide the jury with sufficient guidance that would enable it to reach a correct verdict on the basis of a proper application of the law. See *Vertex, Inc.* v. *Waterbury*, supra, 278 Conn. 572–73. Here, in its charge to the jury, the court stated that "as to permanent injury, if you find that it is reasonably probable that the plaintiff has suffered a permanent injury, you should endeavor to compensate him for what he would be expected to suffer from those permanent conditions over the period of his life expectancy." Although the court rejected the defendant's requested instruction, the court's instructions conveyed the same general principle.[9] After stating that "the plaintiff's noneconomic damages should be decreased if he underwent—or would be decreased if he underwent [the] two operations recommended by [Caputo]," the court instructed the jury that "[i]n connection with noneconomic damages for future suffering and impairment, you may consider the evidence from [Caputo] about additional surgery." Although these statements immediately preceded the court's instruction on mitigation of damages, we conclude that these instructions, when read as a whole, were adapted properly to the law and

---

[9] "A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 47, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995).

provided the jury with sufficient guidance. We conclude, therefore, that the court properly charged the jury regarding noneconomic damages.

The judgment is affirmed.

In this opinion the other judges concurred.