# ROBERT WATSON *v.* COMMISSIONER OF CORRECTION
## (AC 28664)

McLachlan, Gruendel and Borden, Js.

Argued September 12—officially released November 11, 2008

*Kirstin B. Coffin,* special public defender, for the appellant (petitioner).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Yamini Menon,* deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Robert Watson, appeals from the judgment of the habeas court denying his sixth amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that (1) identifications of the petitioner introduced at his criminal trial did not deprive him of his right to due process of law and (2) the alleged failures of his trial and appellate counsel did not deprive him of his right to effective assistance of counsel. We affirm the judgment of the habeas court.

The following facts and procedural history inform our disposition of the petitioner's appeal. On September 6, 1996, the petitioner was convicted of assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-8, assault of a victim sixty or older in the second degree in violation of General Statutes §§ 53a-60b (a) and 53a-8, robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (3) and 53a-8, conspiracy to commit robbery in the third degree in violation of General Statutes §§ 53a-136 and 53a-48 (a), burglary in the first degree in violation of General Statutes §§ 53a-101 (a) (2) and 53a-8, and conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-103 and 53a-48 (a). On November 8, 1996, the petitioner was sentenced to forty-five years

in prison, suspended after thirty-five years, and five years of probation. This court affirmed his conviction on direct appeal. *State* v. *Watson*, 50 Conn. App. 591, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001).

In that appeal, we determined that the jury reasonably could have found the following facts. "On October 18, 1994, Hoyt Pease, eighty-five years old, drove from his home in Southington to the Fleet Bank branch office in Berlin. He withdrew $100 from the automatic teller machine (teller machine). He was then approached by the [petitioner], who claimed to be lost and . . . to be having car problems. . . . Pease offered to show the [petitioner] the way to the highway and added that it would take them past his home." Id., 594.

The petitioner, driving a red Yugo "with distinctive wheel covers and a broad white stripe underlined in black," followed Pease for several minutes before sounding his horn and pulling over, indicating that the car was overheating. "Pease stopped his car and . . . offered to take the [petitioner] to his home to get water to fill the radiator. The [petitioner] then followed Pease to his home." Id.

In his driveway, Pease filled the petitioner's radiator, noting that the water was low but that it was not boiling over. While the petitioner and Pease were in the driveway, Pease's wife, Patricia Pease, joined the men and greeted the petitioner. "[Hoyt] Pease then led the [petitioner] to a road that led to Interstate 84. The [petitioner] told Pease that his car needed gasoline. . . . Pease then led the [petitioner] to a nearby gas station . . . ." Id., 594–95. The gasoline station attendant attempted to assist the petitioner, but the petitioner instructed him not to pump any gasoline. After Pease drove away,

the petitioner told the attendant, "[t]o hell with the gas," and was seen driving away in the same direction as Pease. (Internal quotation marks omitted.) Id., 595.

"Pease followed the same route home [that he had taken to the gasoline station] and parked his car in the garage. Approximately ten minutes later, Patricia Pease returned home and parked her car in the garage, but did not close the garage door. During this time, Patricia Verderame, the Peases' neighbor, and Paul Stocking, Verderame's business partner, were in Verderame's front yard . . . . They both observed the Peases arrive home. Shortly after Patricia Pease arrived home, Verderame and Stocking observed two cars drive up the Peases' driveway at excessive speeds. The first car was a small red import with white stripes along the sides." Id.

Several minutes after the cars arrived, Verderame and Stocking left Verderame's yard. "At approximately the same time, Patricia Pease heard someone in the garage. She called to her husband, and the two went to the garage. As Hoyt Pease entered the garage, he was struck by a man standing to his right near a pile of firewood logs. Patricia Pease turned and charged his attacker, but was struck by a second blow and knocked to the floor. . . . The attacker then took Hoyt Pease's wallet and fled. The couple assisted each other, returning to the house to call 911." Id., 596.

Hoyt Pease testified that he was taken to the Southington police department several days after the attack and identified a vehicle in police custody as being "exactly like the car [he] had seen a few days before" being driven by the individual he met at the teller machine. He also identified the petitioner in court as being the person he had met at the teller machine and testified that he had also done so from a photographic array. The state introduced a videotape and two still

photographs from the teller machine surveillance, allegedly showing the petitioner. In addition, the state called two police officers to testify, over the objection of defense counsel, that in their opinion the petitioner was the individual depicted in the photographs and videotape.

At trial, the state presented a theory of the case that the petitioner was at the bank looking for "a mark or a target." It argued that the petitioner was the individual whom Hoyt Pease met at the teller machine and assisted in the driveway and that the petitioner later returned to the Pease home with an accomplice and attacked the Peases. There was a large quantum of evidence introduced showing that the petitioner was the individual whom Pease had helped in the driveway and that one of the cars driven by the assailants matched the description of the petitioner's car. There was no eyewitness, however, who actually saw the petitioner attacking the victims, and the Peases were unable to identify their attackers. Hoyt Pease indicated that he never saw the assailant, and Patricia Pease testified that she did not believe that the petitioner had been the person who attacked her and her husband. The petitioner's trial attorney proceeded under the theory that although the petitioner may or may not have been the individual who met Hoyt Pease at the teller machine and sought his help, he was not the person who later attacked the Peases.

After his conviction and subsequent direct appeal, the petitioner filed a petition for a writ of habeas corpus dated March 5, 1997, and on April 28, 2006, filed his sixth amended petition. The petition, as amended, contained three counts. The first alleged that the multiple perceived failures of his attorney at trial deprived the petitioner of effective assistance of counsel in abrogation of his sixth and fourteenth amendment rights. The second count alleged that his appellate counsel's failure "to

pursue all meritorious issues on appeal" similarly deprived the petitioner of his constitutional rights. Finally, the third count alleged that the petitioner was deprived of due process of law by introduction of the police opinion testimony identifying him from the teller machine videotape. After a two day trial, the court rendered judgment denying his petition on February 13, 2007. The court granted certification to appeal, and this appeal followed.

On appeal, the petitioner claims that the court incorrectly decided each of the three counts in his petition. First, he argues that his due process rights[1] were violated when the trial court allowed the police officers to testify as to their opinion that he was the individual appearing in the teller machine surveillance videotape. Next, the petitioner claims that his counsel in the direct appeal from the conviction was ineffective in failing to raise the issue of the police officers' opinion testimony in that appeal. Finally, he argues that trial counsel was ineffective in that counsel failed to introduce photographs, an investigative report and 911 tapes that may have exonerated the petitioner. The petitioner also claims that trial counsel was ineffective in failing to argue that it would have been difficult for the petitioner to find an accomplice and return to the Peases' home in the allotted time frame. We address each of these claims in turn.

I

We begin our analysis with the applicable standard of review: "The habeas court is afforded broad discretion in making its factual findings, and those findings

---

[1] The petitioner cites both the federal and state constitutional provisions in support of his claims. Because he has not provided an independent analysis of the Connecticut constitutional provisions, however, we review only the federal constitutional claims. See State v. West, 274 Conn. 605, 623 n.27, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005).

will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Faraday* v. *Commissioner of Correction*, 288 Conn. 326, 338, 952 A.2d 764 (2008).

Some nine years after the petitioner's conviction, our Supreme Court decided *State* v. *Finan*, 275 Conn. 60, 881 A.2d 187 (2005). In that robbery case, four police officers who had not witnessed the crime itself testified that they had viewed a surveillance videotape of the robbery and that in their opinion, the defendant was the individual appearing in the videotape. Id., 63. The Supreme Court held that such an identification was "an ultimate issue" in the case and, as such, was inadmissible as provided in § 7-3 (a) of the Connecticut Code of Evidence. Id., 69.

In this case, the petitioner claims that *Finan* enunciated a preexisting constitutional rule of evidence. He argues that the police officers' testimony as to their opinion that he was the individual appearing in the teller machine surveillance tape violated his due process rights. This claim is entirely unfounded.

In *Finan*, the Supreme Court held that this type of evidentiary issue "is not constitutional in nature . . . ." (Internal quotation marks omitted.) Id. Further, the Supreme Court explicitly cited our decision in the petitioner's direct appeal as illustrating a situation in which "lay witnesses *may* testify regarding identity or similarity of persons." (Emphasis added.) Id., citing *State* v. *Watson*, supra, 50 Conn. App. 600, and *State* v. *Gagnon*, 18 Conn. App. 694, 714, 561 A.2d 129, cert. denied, 213 Conn. 805, 567 A.2d 835 (1989). As such, we affirm

the judgment of the habeas court with regard to the petitioner's due process claim.[2]

## II

The petitioner next claims that the court improperly concluded that he was not deprived of his constitutional right to effective assistance of trial and appellate counsel. "A criminal defendant's right to the effective assistance of counsel extends through the first appeal of right and is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution." *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "The standard of review of a habeas court's denial of a petition for a writ of habeas corpus that is based on a claim of ineffective assistance of counsel is well settled. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner generally must show [1] that counsel's performance was deficient and [2] that the deficient performance prejudiced the defense. See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Ortiz* v. *Commissioner of Correction*, 92 Conn. App. 242, 243–44, 884 A.2d 441, cert. denied, 276 Conn. 931, 889 A.2d 817 (2005). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland* v. *Washington*, supra, 689.

---

[2] The respondent, the commissioner of correction, devotes much of her argument to the proposition that the petitioner is procedurally barred from raising his due process claim. Because we conclude, however, that the trial court's admission of the testimony at issue did not implicate the petitioner's due process rights, we need not address whether he is barred from raising the claim in the first instance.

## A

The petitioner claims that his appellate counsel was ineffective for failing to raise the preserved claim regarding the officers' testimony expressing their opinions that the petitioner was the individual appearing in the teller machine surveillance videotape. When applying the two part *Strickland* analysis in the context of a claim of ineffective assistance of appellate counsel, the petitioner must first "establish that appellate counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions. . . . Indeed, [e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on the central issue if possible, or at most on a few key issues." (Internal quotation marks omitted.) *DaEria* v. *Commissioner of Correction*, 107 Conn. App. 539, 542, 946 A.2d 249, cert. denied, 289 Conn. 911, 957 A.2d 877 (2008).

After demonstrating deficient performance, the petitioner must then satisfy the prejudice prong of *Strickland* by "establish[ing] that, because of the failure of his appellate counsel to raise a [particular] claim, there is a reasonable probability that he remains burdened by an unreliable determination of his guilt. . . . In order to prevail on a claim of ineffective assistance of appellate counsel, therefore, a habeas petitioner must show not only that his appeal would have been sustained but for counsel's deficient performance, but also that there is a reasonable probability that the trial verdict would have been different." (Internal quotation marks omitted.) Id., 542–43.

The court held that the petitioner did not meet his burden on either prong of the *Strickland* analysis. On appeal, the petitioner argues that his appellate counsel's performance was deficient because she failed to raise a claim that was ultimately decided nine years later in what might have been the petitioner's favor. See *State* v. *Finan*, supra, 275 Conn. 60. He urges us to consider that there were several cases and a treatise indicating the inadmissibility of lay opinion testimony regarding ultimate issues existing at the time of the direct appeal.[3]

Regardless of the state of the common law at the time, a habeas court will not, with the benefit of hindsight, second-guess the tactical decisions of appellate counsel. "Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue] . . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . . Most cases present only one, two, or three significant questions. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Internal quotation marks omitted.) *Ormsby* v. *Frankel*, 54 Conn. App. 98, 113 n.6, 734 A.2d 575 (1999), aff'd, 255 Conn. 670, 768 A.2d 441 (2001).

On direct appeal, the petitioner's counsel, attorney Lisa J. Steele, raised three claims. See *State* v. *Watson*, supra, 50 Conn. App. 593. Any additional claims would likely have weakened the overall case on appeal. In

---

[3] The petitioner cites C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.17.3, p. 186; *State* v. *Spigarolo*, 210 Conn. 359, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); *Kowalewski* v. *Mutual Loan Co.*, 159 Conn. 76, 266 A.2d 379 (1970); and *State* v. *Donahue*, 141 Conn. 656, 109 A.2d 364, 109 A.2d 364 (1954), cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257 (1955), in support of his argument.

fact, at the habeas trial, Steele testified that she spent several hours researching the possibility of raising the issue of the police opinion testimony on appeal. She reviewed C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988), the treatise cited by the petitioner; see footnote 3; and several cases. She indicated that the treatise and the case law led her to the conclusion that the police officers' testimony was likely admissible and decided not to pursue that avenue on appeal.[4] We conclude that Steele's decision not to pursue this issue on the petitioner's direct appeal falls within "the wide range of reasonable professional assistance"; *Strickland* v. *Washington*, supra, 466 U.S. 689; and did not constitute deficient performance. We therefore need not reach the prejudice prong of the *Strickland* analysis.

### B

The petitioner's final claim alleges ineffective assistance of his trial counsel, John Watson. He argues that attorney Watson's performance was deficient because (1) he failed to introduce an investigative report showing that the horn on the petitioner's car was inoperable, (2) he failed to introduce the audiotape from Patricia Pease's 911 call, (3) he failed to introduce a photograph of the victims' garage door being open, (4) he failed to introduce a computer printout that was inconsistent with the 911 recording and (5) he did not effectively argue that the petitioner would not have had enough time to find an accomplice and return to the Peases' home from the gasoline station. We address each of these claims, noting initially that "[c]ounsel is strongly presumed to have rendered adequate assistance and

---

[4] We note again that Steele may have been correct because the *Finan* decision cited the petitioner's direct appeal as an example of a situation in which "lay witnesses may testify regarding identity or similarity of persons." *State* v. *Finan*, supra, 275 Conn. 69, citing *State* v. *Watson*, supra, 50 Conn. App. 600.

made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Henderson* v. *Commissioner of Correction*, 104 Conn. App. 557, 572, 935 A.2d 162 (2007), cert. denied, 285 Conn. 911, 943 A.2d 470 (2008).

Regarding the investigative report, Hoyt Pease testified at trial that the petitioner sounded his car horn to indicate that he was having car trouble. Attorney Watson had an investigator inspect the petitioner's vehicle prior to trial, and the investigator determined that the vehicle's horn did not work. The petitioner argues that attorney Watson's failure to introduce this report at trial amounted to deficient performance under the first prong of the *Strickland* analysis. Attorney Watson, however, testified at the habeas trial that by the time the investigator viewed the vehicle, the car had been sitting "for probably two years without a hood on it in an open lot at the Southington police station . . . ." He determined that introducing the report would invite difficult questions regarding the difference between the condition of the car at the time of the robbery and at the time of the defense investigation two years later.

Next, we address the 911 tape, the police computer printout and the photograph of the Peases' garage door. The petitioner argues that these items should have been introduced at trial to contradict the victims' and witnesses' testimony. Attorney Watson testified at the habeas trial, however, that he did not introduce this evidence because he did not want to contradict the victims' testimony. Hoyt Pease had testified that he never saw the assailant, and Patricia Pease testified that she did not believe that the petitioner had been the person who attacked her and her husband. Attorney Watson decided not to contradict their testimony so as not to "undermine the jury's belief in their ability to be accurate in that determination."

Finally, the petitioner argues that attorney Watson's performance was deficient under the first *Strickland* prong because he failed to argue effectively that time would have been too limited for the petitioner to find an accomplice and drive to the victims' home within the time allotted by the state's theory of the case. During closing arguments, however, attorney Watson made the following statement: "So, if, as the state claims, [the petitioner] is involved in the crimes at the [Peases' home], he has less than forty-five minutes to go somewhere, find this phone—according to the state—following [Hoyt] Pease at least just long enough to make sure he's going home—then find the phone—contact his confederate. The confederate comes, they meet somewhere and they talk and plan. He leads the confederate to the Pease home—they commit the crime and leave. Is that humanly possible? Maybe. Maybe. It sounds iffy, and I'll leave it to you." This statement appears to convey argument that the petitioner insists was not presented adequately at trial. It is clear, however, that the point was made to the jury, which had the opportunity to determine whether it believed that the petitioner would have had the opportunity to complete the crime. The fact that the petitioner, with hindsight, would have liked his trial attorney to have spent more time bringing this issue to the jury's attention is of no import. As discussed previously, "[this] court will not, in hindsight, second-guess counsel's trial strategy." *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 770, 953 A.2d 685 (2008).

On each of these arguments in support of the petitioner's claim of ineffective assistance of trial counsel, we conclude that attorney Watson's decisions fall within the category of strategic decisions that our courts consistently refuse to second-guess. See *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 84, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569

(2008). As such, we need not address the prejudice prong of the *Strickland* analysis because we agree with the habeas court that attorney Watson's performance was not deficient. See *Strickland* v. *Washington*, supra, 466 U.S. 687.

The judgment is affirmed.

In this opinion the other judges concurred.