******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID N.J.*  *v.* COMMISSIONER
OF CORRECTION
(AC 38488)

Beach, Mullins and Sullivan, Js.**

*Argued October 11, 2016—officially released February 28, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Vishal K. Garg*, for the appellant (petitioner).

*Matthew A. Weiner*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *David M. Carlucci*, assistant state's attorney,
for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, David N.J., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims that the court improperly rejected his claim that his trial counsel rendered ineffective assistance by (1) failing adequately to cross-examine the victim and others regarding the victim's version of events, and (2) failing adequately to cross-examine VJ, the victim's brother. We affirm the judgment of the habeas court.

Our Supreme Court, which affirmed the petitioner's conviction on direct appeal in *State* v. *David N.J.*, 301 Conn. 122, 19 A.3d 646 (2011),[1] set forth the following facts which the jury reasonably could have found: "The victim, who is the stepgranddaughter of the [petitioner], was born in August, 1997. From August, 2003, through December, 2005, the victim resided in an apartment in Hartford with her father V, her older brother VJ, and three younger siblings. During that time period, the [petitioner] was a frequent visitor to the victim's home, and he moved into the apartment during the middle of 2005 after his wife entered a nursing home.

"Thereafter, the [petitioner] had frequent opportunities to be alone with the victim because V often asked the [petitioner], who temporarily had been out of work due to a fractured arm, to watch the children while V was at work or school. If V was away from home or was at home sleeping, the [petitioner] would often take the victim into his bedroom and engage her in acts of vaginal intercourse, both penile and digital, and fellatio; he gave the victim money after she engaged in these acts. At some point during that two year period, the victim confided in VJ, who was also her best friend, that the [petitioner] had been touching her inappropriately. Thereafter, whenever the [petitioner] took the victim into the bedroom, if VJ was around, he would go to the door and either listen briefly or attempt to peek at what was happening through a small gap at the bottom of the door to the hallway. At one point, VJ was able to see the victim lying naked atop a set of pillows on the floor in the bedroom; the victim subsequently caught VJ at the door when she saw his socks outside the room through the gap and asked him to stop eavesdropping. Neither the victim nor VJ told V of the ongoing abuse because they were afraid that no one would believe them. The victim also feared that V would injure the [petitioner] and then ultimately be sent to prison.

"On Christmas Eve in 2005, the [petitioner] made the victim perform fellatio on him before she and her family left to visit her aunt's house. At that time, the family was preparing to move because their apartment was not in good condition, and the [petitioner] was also about to find his own place to live. When they returned home that night, the [petitioner] was not present, and

VJ convinced the victim to tell an adult about the abuse. The victim first told R, an older cousin, who instructed her to tell V of the abuse.

"The victim told V about the abuse later that day, and V brought the victim to the Connecticut Children's Medical Center. After medical personnel there alerted the [Department of Children and Families (department)] and the Hartford police about the victim's allegations, the victim was referred to the Aetna Foundation Children's Center at Saint Francis Hospital and Medical Center, where she underwent a diagnostic interview by Lisa Murphy-Cipolla, a clinical social worker, and an examination by Frederick Berrien, a physician. The investigation continued when Phillip J. Clark, a Hartford police detective, subsequently reviewed a video recording of Murphy-Cipolla's interview of the victim, and then conducted an interview of the [petitioner].

"Subsequently, the state charged the [petitioner] with five counts of sexual assault in the first degree in violation of § 53a-70 (a) (2), and one count of risk of injury to a child in violation of § 53-21. The [petitioner's] theory of the case during the subsequent jury trial was that the victim was a habitual liar who, acting in concert with VJ, had fabricated the charges against the [petitioner] to force him to move out because she: (1) was angry that he had taken her bedroom after he moved in; and (2) resented his attempts to discipline her. The jury, however, returned a verdict finding the [petitioner] guilty on counts one, two and five of the information alleging, respectively, sexual assault in the first degree by digital-vaginal penetration, penile-vaginal penetration, and fellatio, and count six alleging risk of injury to a child; the jury found him not guilty on counts three and four of the information alleging sexual assault in the first degree by penile-anal penetration and cunnilingus. After denying the [petitioner's] motions for a new trial and for a postverdict judgment of acquittal, the trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced the [petitioner] to a total effective sentence of twenty-nine years imprisonment with ten years of special parole." (Footnotes omitted.) Id., 126–29.

In July, 2012, the petitioner filed a petition for a writ of habeas corpus. In his second amended petition, the petitioner claimed that his trial counsel were ineffective in numerous ways. At the underlying criminal trial, attorneys Robert Meredith and John Delbarba represented the petitioner as cocounsel. In a posttrial brief, the petitioner argued only that his counsel at the underlying criminal trial rendered ineffective assistance in failing adequately to impeach the testimony of the victim and VJ. The court concluded that counsel did not render ineffective assistance. The court granted the petitioner's petition for certification to appeal. This appeal followed.

"Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"To prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. . . . Competent representation is not to be equated with perfection. The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 797–99, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

I

The petitioner argues that the performance of trial counsel was deficient because of the failure to impeach the victim regarding inconsistencies among statements made by the victim in her diagnostic interview, inconsistencies between the victim's testimony at trial and statements made by her in her diagnostic interview, and the victim's purportedly false statement made in her diagnostic interview to the effect that the petitioner had also abused the victim's cousin, T. The petitioner contends that the credibility of the victim was of utmost importance in the criminal trial and that trial counsel's failure to impeach the victim's credibility in these ways constituted ineffective assistance. We do not agree.

A

We first address the claim that the habeas court erred in concluding that his trial counsel were not deficient for failing to cross-examine the victim regarding inconsistencies occurring in her diagnostic interview, in which she gave different accounts regarding the timing of her initial disclosure of the abuse to VJ, and what sexual acts occurred during the most recent incident of abuse. The petitioner also claims that counsel should have brought out in cross-examination inconsistencies between the victim's trial testimony and statements she made in the diagnostic interview. We do not agree.

The habeas court concluded that Meredith thoroughly cross-examined the victim and elicited testimony revealing inconsistencies as to the sequence and detail of her disclosures and demonstrating that the victim harbored some degree of animus against the petitioner. The court credited counsel's testimony that, as a matter of trial strategy, witnesses were not cross-examined on all potential inconsistencies but rather on "the ones that are the most substantial . . . ."

Meredith testified at the habeas trial about his trial strategy regarding the cross-examination of the victim. He testified that he reviewed the video of the diagnostic interview and that he had a transcript made in preparation for his cross-examination of the victim. He explained that the theory of the defense was that a physical examination revealed no physical trauma to

the victim, that the victim fabricated the abuse because she did not want the petitioner to live in the house, and that, because of the physical characteristics of the house, VJ could not physically have been able to look under the bedroom door and see anything happening. Meredith testified that "[o]ftentimes . . . it's much harder because it is a child . . . . [I]f this was an . . . adult sex case, your cross-examination can be much harder and much more prepared. In these types of cases it's almost a fluid cross-examination because you have to interact with a child at an age appropriate language and also ask a question in such a way as to not appear in front of a jury that you're beating the child up." He testified that he chose to cross-examine the victim on significant issues that fit within the theory of the defense. Meredith stated that he did not question the victim regarding certain alleged inconsistencies because, in his opinion, either the inconsistencies did not exist or he chose not to pursue them as a matter of strategy.

We agree with the habeas court that Meredith's cross-examination of the victim was thorough and did not fall below an objective standard of reasonableness. Meredith elicited testimony from the victim regarding the position of the room in question in relation to other rooms in the house, including VJ's. She said that VJ looked under the small space under the door to see what was going on, and that she knew it was VJ because she saw his socks. She conceded that she got in trouble with her father and the petitioner for lying. She agreed that she was upset when the petitioner moved in and took her room, and she admitted to telling others that she would get her room back. She said that she would get in trouble when the petitioner watched her and that she was angry at the petitioner for punishing her because he was not her "real" grandfather. She agreed that she was angry at the petitioner for making her do her chores over again if she did not do them right the first time. She said she had access to adult channels on the television. She acknowledged that she heard children at school talking about sex. Finally, although her trial testimony was that the petitioner would give her a few dollars after abusing her, she had said during her diagnostic interview that he would give her five, ten, twenty, and one hundred dollar bills.

"An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy. . . . The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." (Citation omitted; internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). A review of the record in this case persuades us

to agree with the habeas court.

B

The petitioner argues that the court erred in concluding that counsel did not render ineffective assistance by failing to cross-examine Murphy-Cipolla regarding inconsistencies within the victim's diagnostic interview and inconsistencies between her trial testimony and statements that she made in the diagnostic interview. We disagree.

At the habeas trial, Meredith testified that he thought that Murphy-Cipolla's testimony was "clean" and that after Murphy-Cipolla had testified, he and Delbarba decided not to cross-examine her because "all she did was regurgitate the story of the child, and had we opened that up to cross, there would have been a redirect. So I think we made a choice, a strategic decision not to cross-examine her because she did not . . . hurt us at all because all she did was regurgitate the child's story." He testified that "[y]ou don't cross-examine on every possible inconsistency you might find. You try to pick the ones that are the most substantial and the ones that fit best within your theory of defense." He stated that he did not want "to open the door up so the state could have another shot at her or develop additional information." The diagnostic interview was video recorded, and Meredith explained that he did not want to introduce the audio-visual copy of the diagnostic interview into evidence because "I don't want the interview to come in unless there is suggestibility . . . . The rationale for that is . . . not only is it oral in the child's own words, but also visual, and in this particular case it was a very young child and I didn't want a diagnostic interview in the jury room where they could watch it over and over again."

The court found that counsel had a valid strategic reason for not offering any portion of the diagnostic interview into evidence, and concluded, after reviewing the transcript of the diagnostic interview, that an "an audio and visual presentation of the [diagnostic interview] would have been devastating to the defense." The court also concluded that the petitioner had failed to demonstrate prejudice arising from counsel's decision not to cross-examine Murphy-Cipolla concerning inconsistencies in the victim's disclosures in the diagnostic interview. The court stated that, in light of counsel's opinion that the testimony was "clean," it was not unreasonable for counsel to conclude that cross-examining Murphy-Cipolla "would have led to damaging portions of the interview being presented to the jury. As counsel testified at trial, the defense did not wish to open the door for the state to develop additional testimony against the petitioner on redirect examination."

The petitioner argues that defense counsel should have presented the aspects of the diagnostic interview

that were helpful to the defense because the state already had presented parts of the transcript of the diagnostic interview that were helpful to its case. The habeas court determined that the performance prong was not satisfied because defense counsel's decision not to introduce any of the diagnostic interview was a sound strategic decision. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . . [B]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Roger B.* v. *Commissioner of Correction*, 157 Conn. App. 265, 284–85, 116 A.3d 343 (2015) (petitioner did not overcome presumption that decision not to introduce videotapes of interview in child sexual assault case was strategic); see also *Watson* v. *Commissioner of Correction*, 111 Conn. App. 160, 170–72, 958 A.2d 782 (counsel's decision not to introduce report because it would invite difficult questions was strategic decision), cert. denied, 290 Conn. 901, 962 A.2d 128 (2008).

We conclude that the habeas court did not err in finding neither the performance prong nor the prejudice prong proved with regard to the claim that the cross-examination of Murphy-Cipolla was constitutionally deficient. As to performance, attacking minor inconsistencies may well have served only to reinforce the impact of the overall events related by the victim to Murphy-Cipolla, and risking an audio-visual version of the victim's presentation may have been foolhardy. Counsel ought not be faulted for reasonable choices. The habeas court also did not err in determining that the petitioner failed to demonstrate prejudice. Further cross-examination would not likely have affected the outcome of the trial.

C

The habeas court also properly concluded that trial counsel's decision not to call T to testify was a matter of sound trial strategy. The victim's diagnostic interview, in written form, was admitted as a full exhibit at the habeas trial. In that interview, the victim stated that T told her that the petitioner had sexually abused T in a specific manner. The habeas court concluded that trial counsel credibly testified that, after assessing the strength of the state's case, they made a strategic decision not to call T as a defense witness because there was a real risk that T might testify in a manner damaging to the defense. The court further concluded that the petitioner had failed to establish that the victim's statements about T's alleged abuse were demonstrably false.

The petitioner argues that trial counsel did not have a reasonable strategic basis for declining to present evidence at the underlying criminal trial that the victim had falsely stated that the petitioner abused T. The victim stated during her diagnostic interview that T had told her that the petitioner made her perform fellatio on him. The petitioner argues that the court erred in finding that he had failed to show that the victim's suggestion that the petitioner had abused T was false. He argues the allegation must have been false because "T repeatedly denied the abuse,"[2] there was no physical indication that T had been abused, and the department did not have any reports substantiating sexual abuse involving T. He further argues that T's testimony was not the only avenue through which this evidence could have been presented at the criminal trial. Although the state introduced into evidence at the criminal trial only portions of the diagnostic interview, trial counsel could have presented the victim's statements regarding the petitioner's abuse of T through the testimony of Murphy-Cipolla, who conducted the diagnostic interview. The rationale underlying the petitioner's argument is that, at least for the purpose of evaluating the victim's credibility, the jury should have been aware of the victim's having wrongfully accused the petitioner of abusing another minor.

"[O]ur review of an attorney's performance is especially deferential when his or her decisions are the result of relevant strategic analysis. . . . Thus, [a]s a general rule, a habeas petitioner will be able to demonstrate that trial counsel's decisions were objectively unreasonable only if there [was] no . . . tactical justification for the course taken. . . . [T]he decision not to call a witness must be grounded in some strategy that advances the client's interests . . . .

"[T]he presentation of testimonial evidence is a matter of trial strategy. . . . Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney . . . without adequate explanation . . . failed to call the witness at trial. . . . Furthermore, [t]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. . . .

"[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case . . . . Thus, an attorney's choice to pursue a defense that focuses on casting doubt on the state's case rather than

on calling his or her own witnesses can be a reasonable choice." (Citations omitted; internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 540–41, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016).

Meredith testified at the habeas trial as to the strategy underlying his decision not to call T as a witness. He testified that in the course of investigating whether the victim's allegation regarding the petitioner's abuse of T was true, he discovered that T's mother would not let police talk to T. Meredith testified, "[S]o that meant that [the petitioner] wouldn't be prosecuted for that." Trial counsel attempted to make contact with T through the use of an interstate subpoena, as T and her mother had moved out of state, but he was not able to contact her until after the victim had testified in the underlying criminal trial. Meredith testified that, because he had not been able to talk to T, she was "a wildcard . . . she could have told us something that we didn't want to hear because we never got a chance to talk to her personally and then she would have been in the courthouse and the state's attorney would have had access to her. . . . [W]e had some concerns that [T] might say, it didn't happen to me but I saw it happen to so-and-so, or would she say it happened to her."

Trial counsel was unable to contact T in advance despite efforts to do so. He did not know how T would testify. The court's finding that the petitioner failed to establish that the victim's suggestion that the petitioner had abused T was demonstrably false was not clearly erroneous. None of the petitioner's arguments in this regard help his cause. A lack of reports substantiating abuse or a prior denial by T of abuse did not conclusively indicate that the alleged abuse did not occur.[3] Furthermore, when asked to clarify, the victim indicated in the diagnostic interview that T had told this information to her. Whether T was abused and whether T told the victim that she had been abused are different questions. Trial counsel's decision not to present certain testimonial evidence that might well have turned out to be harmful to the defense was a strategic decision that we will not second-guess. Because this decision was based on sound trial strategy, this claim fails the first prong of *Strickland*.[4]

## II

The petitioner claims that the habeas court erred in rejecting his claim that trial counsel rendered ineffective assistance by failing adequately to impeach VJ as to several matters. He argues that VJ's testimony should have been impeached by use of a prior inconsistent statement, in which he had informed an investigator with the department that he was unaware of any sexual abuse. This statement purportedly contradicted his trial testimony to the effect that he saw the petitioner abuse the victim. There was also a claimed inconsistency

between his trial testimony, in which he described the incident of abuse he said occurred in the petitioner's bedroom, and the victim's statement in her diagnostic interview that that particular incident of abuse had occurred in her bedroom. We disagree.

At the underlying criminal trial, VJ testified that after the victim disclosed the abuse to him, he saw the petitioner take the victim into the petitioner's bedroom, which had been the victim's bedroom before the petitioner moved in. VJ looked under a crack in the door and saw the victim lying naked on pillows. He stated that this was the only time that he saw evidence of abuse.

At the habeas trial, Meredith testified that he did not consider the victim's description in her diagnostic interview of an incident in which the petitioner laid pillows on the floor of her bedroom and sexually assaulted her to be necessarily inconsistent with VJ's description of the event. First, the two incidents may have been two separate instances of sexual assault,[5] and, second, the victim and VJ may have been using different words to describe the same room, in that the petitioner moved into the bedroom that previously had been the victim's bedroom. An investigator for the department testified that VJ informed her "that he had witnessed an event, but that [he] wasn't specific about sexual abuse," and, thus, the investigator concluded that he had not witnessed sexual abuse. This conclusion did not rule out the possibility that he had observed such abuse.

The habeas court concluded that trial counsel had thoroughly and effectively cross-examined VJ. The court found that the cross-examination revealed "inaccuracies in a prior statement given to law enforcement, inconsistences in his direct testimony, and bias against the petitioner. The court note[d] for emphasis the on the stand recantation regarding witnessing a sexual assault of the victim by the petitioner on Super Bowl Sunday."

Meredith's cross-examination of VJ was thorough and did not fall below an objective standard of reasonableness. VJ's description of the pillow incident was not necessarily inconsistent with the victim's description in her diagnostic interview. VJ's vague description to the investigator was not necessarily inconsistent with his later description of the pillow event during his trial testimony. The petitioner's argument overlooks a very substantial reason not to cross-examine extensively on this subject: each time the stories were told, the jury would hear one more recitation of sexual abuse by the petitioner. Even if a detail were different, the overall picture may well have been reinforced in the jury's collective mind. We have no basis to second-guess Meredith's tactical decision to not cross-examine VJ as to these issues. See *Velasco* v. *Commissioner of Correc-*

*tion*, supra, 119 Conn. App. 172.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identify may be ascertained. See General Statutes § 54-86e.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The petitioner appealed from the judgment of the trial court to the Appellate Court, and pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1, the appeal was transferred to the Supreme Court.

[2] There is no evidence that T denied the abuse. T did not testify at the criminal trial, and Meredith testified at the habeas trial that he was unable to speak with T prior to the criminal trial.

[3] The petitioner further argues that trial counsel's investigation on the issue of whether T was abused was deficient for failing to discover that no records existed indicating that T had been abused. The nonexistence of such records, the petitioner argues, would demonstrate that the victim's allegation of abuse regarding T was false. The issue of ineffective assistance of counsel due to an inadequate investigation for failing to discover the nonexistence of certain records was not before the habeas court. As stated by the habeas court during trial, however, the nonexistence of records does not conclusively demonstrate that T was not abused.

[4] The petitioner now criticizes his trial counsel for not having brought up the suggestion that he had sexually abused another child, in order then to suggest that the abuse did not occur. As it was, the jury never heard a suggestion that the petitioner had abused another minor victim. It is unrealistic to posit that counsel were constitutionally ineffective by failing to elicit testimony regarding the possibility that the petitioner abused another child.

[5] In the victim's description in her diagnostic interview of an incident of abuse involving pillows on the floor, she described an act of fellatio and did not state that she was naked.

[6] The petitioner also claims that "the combined weight of counsel's multiple deficiencies prejudiced the petitioner." The habeas court concluded that "nothing in the petitioner's analysis . . . [was] sufficient to overcome the presumption of constitutionally sufficient legal representation, whether considered separately or cumulatively with the petitioner's other claims." We have concluded that the habeas court properly determined that counsel's representation was constitutionally sufficient regarding the petitioner's claims individually and we decline to recognize a claim that the purported errors, viewed cumulatively, rendered counsel's performance constitutionally insufficient. See *McGee* v. *Commissioner of Correction*, 157 Conn. App. 863, 864 n.1, 118 A.3d 140, cert. denied, 318 Conn. 903, 122 A.3d 633 (2015).